## J. H. ELLERBE *v.* STATE' OF MISSISSIPPI.

CRIMINAL LAW.   *Court.   Absence of judge during trial.   Waiver.*

> One prosecuted for crime is entitled to have a legally constituted
> court at every stage of his trial, and where the presiding judge
> calls a member of the bar to the bench, and, by consent of counsel,
> leaves the courthouse for some minutes during the concluding ar-
> gument for the state, the judgment of conviction will be reversed
> on appeal of the accused, notwithstanding the waiver of objection
> by his counsel.

FROM the circuit court of Lauderdale county.
HON. G. B. HUDDLESTON, Judge.
The opinion states the case.

*McIntosh & McIntosh, F. V. Brahan* and *Etheridge & Mc-
Beath,* for the appellant.

The testimony shows conclusively "such absence from the
room, on the part of the judge, as constituted a temporary relin-
quishment of the control of the court and of the conduct of the
trial," which this court, in the case of *Turbeville* v. *State,* 56
Miss., 793, said would necessitate a reversal.   In that case the
judge, during the argument of the counsel to the jury, left the
bench and stepped into a room immediately adjoining and in the
rear of the bench, and separated from it only by the thickness of
the wall, through which a door opened.   He placed a member of
the bar on the bench, with instructions to call and notify him
if needed.   He remained in this room, absent from the bench,

and distant from it, as the bill of exceptions show, five or six feet, during the greater part of the time consumed in the several addresses to the jury.    It does not appear whether the door which opened from the bench or rostrum into the room (styled the judge's retiring room) was closed or open while the judge was thus absent.

In the case, *supra*, the court, continuing, said: " In civil cases or in prosecutions for misdemeanors he may give place to another by consent, and, if he does so without objection in advance, consent will perhaps be presumed; but in the prosecutions for felonies, no consent can be given, and if given it will not be binding on the accused. "

It is true that the testimony as shown in the bill of exceptions taken upon the motion for a new trial discloses the fact that the court, leaving the bench and the courtroom, called the district attorney and one of the counsel for the defendant to the bench, and stated that his purpose was to leave the courthouse for awhile, provided they made no objection, or consented, and that they did consent.    As a matter of course, neither the learned judge, the district attorney nor the counsel for the defendant was at the time mindful of the ruling of this court in the Turbeville case, or at the time thought about the law in such cases, or that such scene as did occur would transpire in the absence of the court, otherwise the consent of the district attorney and defendant's counsel would not have been asked or given.

It is true that § 920, code 1892, provides for the trial of causes by a member of the bar on agreement of parties, when the judge is disqualified to hear the same, but the judge was not disqualified in this case, hence, the state cannot take refuge behind that statute.    But, even in the state of case provided for by § 920, code of 1892, the member of the bar agreed on and called to the bench must hear and determine the whole case, which was not done here.

Again, a member of the bar presiding by agreement, in case

of a disqualification of the judge, is not the judge of the court, even under § 920 of the code. All his acts are ministerial rather than judicial, more like a master in chancery than anything else. His authority is limited to the hearing of the cause agreed to be submitted to him. He could not, we submit, fine for contempt of court, or do anything or exercise any of the powers appertaining to judges generally, except what was connected with the case he was·trying. *Grenstead* v. *Buckley*, 32 Miss., 148. Hence, even under the provisions of § 920, the law does not contemplate the relinquishment by the judge of his control and management of the court. It directs and provides merely for his retiring from the bench, but not from the courtroom and the delegation of his judicial power and authority to another. *Davies* v. *Wilson*, 65 Ill., 525; *Brownlee* v. *Hewett*, 1 Mo. App.; *State* v. *Cludies, Ib.*, 551.

*Wiley N. Nash*, attorney-general, for the state.

The record shows that the judge was absent with the consent of the accused, and it is equally clear that in the temporary absence he had not relinquished control of the court. The *obiter dicta* in *Turbeville* v. *State*, 56 Miss., 798, have no more weight as authority than other expressions of that class, and should be disregarded. The point is, can a circuit judge, in the progress of a criminal trial, many of which must sorely tax his physical endurance, vacate the bench for a few moments, and call some member of the bar to occupy his seat during this absence, when the trial has reached a stage when no ruling by the court will probably be necessary, the accused consenting to such action? A decision to the contrary would be dangerous doctrine. The case of *Peter* v. *State*, 6 How. (Miss.), 326, is not decisive of the question here presented.

*John W. Fewell*, on the same side.

The constitution of 1890, section 165, by an inference equal to positive enactment, authorizes the attorneys engaged "in

any case '' to agree upon a member of the bar to preside in the place of the judge. I would remark in reference to the Turbeville case, which is so much relied on: First, that the constitution in force at the time that case was tried contained no provision authorizing the attorneys engaged in a case to select a member of the bar to preside. Second, that the counsel of the state had, as was alleged, in his concluding address to the jury, made statements which were improper and well calculated to injure the defendant. Third, that the point was made immediately upon the return of the judge to the bench, and exception taken then and there to the ruling of the court on this objection. In these important particulars the Turbeville case differs from this case. And, fourth, this court, while stating that if the absence of the judge were established it would not hesitate to reverse, decided that there was no real absence and declined to reverse, and yet there was really just as complete and substantial an absence in that case as in this. The court will not measure the number of feet the judge was distant from the bench in order to find a difference between this case and that of Turbeville, nor differentiate the cases as to the conclusion to be reached, because the judge went out of the courtroom to take a nap in the Turbeville case and went out of the courtroom on an errand of mercy in this case. The remarks of the court in the Turbeville case, whilst highly instructive, and of benefit to the circuit judges, and whilst entitled to the greatest respect because emanating from a distinguished judge, were, nevertheless, *dicta*, in so far as they set forth what the court would do in a certain state of case not made by the record under consideration.

No objection was made in this cause to the court's proceeding with the trial of the case; no point was made when the judge returned to the bench on his having been absent; no mistrial was claimed. Could the counsel of the defendant go on and experiment with the jury, lie back and make no point or objection, and then, when their experiment failed, insist upon a new trial —another experiment? If the defendant was injured or ag-

grieved by the judge's absence, ought not he, at once, upon the judge's return, to have insisted that there was a mistrial? The contention is that *ipso facto* upon the judge's leaving the bench the trial ended. Ended how? Why, if the counsel be right in their contention here, the defendant, but for section twenty-two of the constitution, stood acquitted; he was in jeopardy; his consent was void; and, when the judge stepped out on his mission of charity, the defendant became a free man, just as if the court had, without any legal cause, adjourned the term. What harm was done to the defendant? In what respect was he deprived of a fair trial, as secured to him by the constitution? This question, I submit, contains the real point, the meat of the controversy. The only effect of what transpired in the judge's absence, was the placing before the jury by defendant's counsel of a fact which the court had properly held inadmissible, which fact remained with the jury and possibly caused them to make the verdict such as to require a sentence to the penitentiary for life instead of the death penalty.

Argued orally by *J. R. McIntosh*, for the appellant, and by *Jno. W. Fewell* and *W. N. Nash*, attorney-general, for the appellee.

WHITFIELD, J., delivered the opinion of the court.

The appellant was tried for murder, convicted and sentenced to imprisonment in the penitentiary for life. During the trial, whilst one of the counsel for the appellant was making his argument to the jury, the circuit judge left the bench, calling Mr. Bozeman, a member of the bar, to preside in his absence, with the consent of part of the counsel for the state and the defendant, and then left the courthouse. During his absence, a heated, excited altercation occurred between one of the counsel for the state, Judge Fewell, and one of the counsel for the defendant, Mr. Ethridge, then addressing the jury. What occurred, as developed by the testimony on the motion for a

new trial, was this, says one of the witnesses: "Mr. Ethridge said in his argument that Mr. Hoffer had stated to W. W. Henry, a member of this bar, that he, Hoffer, was a witness to the tragedy. He then discussed the failure of the state to introduce Mr. Henry, and he further discussed and criticized the state for objecting to the introduction of Mr. Henry as a witness on the part of the defense. At this point he was interrupted by Judge Fewell, of counsel for the state, who denounced Mr. Ethridge's argument as being outrageous. There was a clash of words between Mr. Ethridge and Mr. Fewell. But finally Mr. Ethridge said, 'I will take it back.' All or a part of it, I am not sure which. I am not sure what he said. Captain Fewell, however, tried to invoke a ruling from Mr. Bozeman, who at that time was occupying the chair of the judge. Mr. Bozeman said he was not sufficiently advised as to what was the testimony in the case to rule on it, but he thought the matter had been settled by the withdrawal of the language objected to. Judge Fewell, however, insisted that the matter was not settled, and that he wanted a ruling. But, at about this juncture, one of the jurors retired from the box, and, before Mr. Ethridge resumed his argument in the case, and before the juror returned to his seat in the box, Judge Huddleston, presiding judge in the case, had returned to the courtroom from a temporary absence." Another witness testifies that "when Mr. Ethridge retracted the language, Captain Fewell then said, 'No, sir; you shan't do it,' and, looking up to the bench, called for the court, and appealed to Mr. Bozeman, saying, 'You, sir, are a lawyer, and ought to know better.' I don't know how that was expressed; don't remember exactly how that was. Mr. Bozeman then remarked that the judge would be back in a little while, and that was the end of the matter." This witness also testified that Henry's testimony had been excluded by the court in the absence of the jury, who never heard it. He also testified that Judge Huddleston had gone to Walker & Hall's building, to see Mr.

Schansberger, whom he said was sick, and that the building was between two hundred and fifty and three hundred yards from the courthouse.

Judge Huddleston testified that he went to see a sick friend, Mr. Schansberger, to get him to go up to his house, he being dangerously sick. He saw him, talked in the Higgin's building with him, trying to get him to go to his house, which he declined to do. He then went into Mr. Amis' office, in an adjoining room, and sat down to smoke a cigar; that he smoked nearly half of it, walked down the stairway, and started in the direction of the courthouse, and met a party who advised him there was an altercation between counsel in the courtroom. He states, further, that he observed the time when he left the bench, and when he got back to the foot of the stairway leading up to the courtroom, and noted that, up to that time, he had been absent from the bench eighteen minutes. We have, thus, the case of a circuit judge leaving the courtroom in the progress of a trial for murder, going to a building some two hundred and fifty or three hundred yards away, leaving the court in charge of a member of the bar called to the bench to preside in his absence, and being gone about twenty minutes—a heated altercation occurring, meantime, between counsel, in the hearing and presence of the jury. It is not the case of a circuit judge being absent a few moments from necessity, suspending, as he should, all proceedings in his absence, but a clear and manifest case of temporary relinquishment of the control of proceedings, which were not suspended, but going forward with a member of the bar presiding as judge, in the way above shown.

In *Turbeville* v. *State*, 56 Miss., 798, 799, the circuit judge merely retired from the bench to a room immediately adjoining, and in the rear of the bench, and separated from it only by the thickness of the wall, through which a door opened. He placed a member of the bar on the bench, with instructions to call or notify him if needed. He remained in this room, thus absent from the bench, and distant from it five or six feet

only, during the greater part of the argument to the jury. The court say: "If we could consider this statement of the facts as showing such absence from the room on the part of the judge as constituted even a temporary relinquishment of the control of the court, and of the conduct of the trial, we should unhesitatingly reverse the judgment. There can be no court without a judge, and his presence, as the presiding genius of the trial, is as essential during the argument as at any other time. We do not mean to say that he must actually listen to every word that falls from the lips of counsel while they are addressing the jury, for this might impose a burden too heavy to be borne, but we do mean that the conduct and control of the argument, within legitimate limits, is confided to him as a judicial duty, and cannot be by him devolved upon another. While he will not be precluded from changing his seat to any portion of the room he may prefer, or from temporarily engaging in conversation or reading or writing, he must remain within hearing of counsel, so as to be able instantly to assert his authority, if demanded by anything that may occur. While it will rarely be necessary or proper for him to interfere with counsel, instances may arise that will require it, and, moreover, the conduct of the jurors, spectators or officers of court may be such as to demand the instant interposition of his authority. In civil cases or prosecutions for misdemeanors, he may give place to another, by consent, and, if he does so without objection in advance, consent will perhaps be presumed; but in prosecutions for felonies, no consent can be given, and, if given, it will not be binding on the accused."

These words could not be more apt if this court had been considering this case. Here, it is idle to say that the circuit judge remained "within the hearing of counsel so as to be able instantly to assert his authority." Beyond all cavil he had abandoned the control of the court and the conduct of the trial temporarily to Mr. Bozeman; and here a signal illustration of the wisdom of the rule announced in Turbeville's case

is furnished.    We have given this proposition the most anxious
consideration.    We have failed, after exhaustive search, to find
a single authority that would support us in disallowing this
assignment of error, and neither the attorney-general nor the
exceptionally able and learned counsel representing the state
in conjunction with the attorney-general, refers us to a single
authority which disapproves the rule announced in *Turbeville*
v. *State*, in harmony with which also is *Peter* v. *State*, 6 How.
(Miss.), 326.    On the contrary, the authorities elsewhere uni-
formly sustain that rule.    In *People v. Dohring* (59 N. Y.,
374), reported in 17 Am. Rep., 349, at p. 353, bottom of the
page, the supreme court of New York expressly affirms the
rule in the Turbeville case that the judge must be where it is
"physically possible for him at any moment, on the arising of
a question" calling for his decision, to be present and make it.

In *Meredith* v. *The People*, 84 Ill., the judge of the court
was in the courthouse, but in a different courtroom, trying an-
other case, after having heard all the evidence in a murder case,
and then having called two members of the bar in succession to
the bench to preside in the murder case during the argument
of counsel, himself having gone back several times to the court-
room where the murder case was being tried, the court said,
page 482:  "It is no less error than if he had been in another
county. . . . The argument of a cause is as much a part
of the trial as the hearing of evidence.    It is a right in his de-
fense secured by the law of the land, of which a citizen cannot
be deprived. . . . The decision is not affected by the con-
sideration that the judge was present a part of the time during
the argument of the case.    If he could be absent during any
part of the trial, and his official duties could, during such time,
be performed by a member of the bar, on the same principle
his absence during the entire trial could be justified."

Mr. Works, in his "Courts and their Jurisdiction," says,
page 87:  "When the court is once opened, the presence of the
judge is necessary at all times when judicial business is being

transacted.'' The following authorities clearly support all three of the propositions laid down in the Turbeville case, to wit: That in the trial of a felony the judge must always be where he can immediately respond to any call for the exercise of his authority in controlling his court and the conduct of the trial, his relinquishment, though even temporary, of such control of the court and conduct of the trial working, as to that case, a dissolution of the court; that the judge cannot delegate his judicial authority to another; and that his doing so, even with the consent of the parties, cannot bind the defendant. The cases cited in the note to *Roy* v. *Hursley*, 25 Am. Rep., 540, 541; 12 Am. & Eng. Enc. L., 11, note 5, with authorities; *Shaw* v. *People*, 3 Hun (Sup. Ct. Rep., N. Y.), opinion by Hardin, J., 279, s.c. 63 N. Y. (Ct. App.), 38, 39; *People* v. *White*, 24 Wendell, 528, bottom of page 545, opinion of Walworth, chancellor; also opinions of other judges, pp. 546, 549, 555, 556, and 563; *Blend* v. *People*, 41 N. Y., 606; *Hoagland* v. *Creed*, 81 Ill., 506; *Van Slyke* v. *Fire Ins. Co.*, 39 Wis., 390. Section 165 of the constitution has no application to the case made by the record.

If this error were a merely technical one, not vital in its nature, we would not for that alone reverse the judgment. But the error here is of the gravest character—it goes to the very organization and constitution of the court trying the appellant on a charge of murder. So far as the lawful power of this court can be exerted in affirming convictions for violations of the law of the land, it shall be exerted; and mere technical errors, without intrinsic merit, when we can, after a careful and thorough examination of the whole case, confidently say that the right result has been reached, that substantial justice has been done, and that, on a new trial, no other result could reasonably be arrived at, will not avail here for reversal in civil or criminal cases; but where the defendant has been, as here, denied a right secured to him by the constitution and the laws of the land, in a matter going to the very constitution of

the court trying him, we are compelled to reverse the case. In such cases the interests of society, the stability of the laws, the due administration of justice, demand a reversal.     Disregard of fundamental right in the case of the guiltiest defendant, his conviction in violation of settled constitutional and legal safeguards intended for the protection of all, are not things which affect the particular defendant in a given case alone, but, in their disastrous and far-reaching consequences, involve in future trials the innocent and guilty alike, subvert justice, and disorganize society.     Guilt should be punished certainly and condignly, most assuredly; but guilt must be manifested in accordance with the law of the land, else some day the innocent, who are sometimes called to answer at the bar of their country, may come to find themselves involved in a common ruin and deprived of the legal trial necessary to the vindication of their innocence.

*Reversed and new trial awarded.     Cause remanded.*