467 So.2d 907 (1985)
Niels C. "Chris" SAND, Jr.
v.
STATE of Mississippi.
No. 54616.
Supreme Court of Mississippi.
February 27, 1985.
Rehearing Denied May 15, 1985.
*908 James G. Tucker, III, Cook, Tucker & Sharp, William M. Frisbie, Bay St. Louis, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Circuit Court of Hancock County, the Honorable Kosta Vlahos presiding, wherein the appellant was tried and convicted of conspiracy to commit mayhem and sentenced to a term of five years in the Mississippi Department of Corrections, with two years of that term suspended. The appellant aggrieved at his conviction and sentence appeals to this Court and assigns as error:
I.
THAT THE TRIAL JUDGE ERRED BY LEAVING DURING JURY DELIBERATIONS AND APPOINTING A MEMBER OF THE BAR TO ACT IN HIS STEAD.
II.
THE TRIAL COURT SHOULD HAVE GRANTED A MISTRIAL BECAUSE OF THE PROSECUTOR'S PREJUDICIAL REMARKS DURING CLOSING ARGUMENT.
A detailed statement of the facts will not be necessary as the two assignments of error deal with trial procedure.
The appellant, a Bay St. Louis police officer, David Green, and Mr. Bodalia, allegedly conspired to throw acid in the face of Mr. Bodalia's business associate, M.K. Desai. It appears from the record that Mr. Bodalia, unhappy with his business dealings with Mr. Desai, contacted appellant to find someone to injure Mr. Desai for pay. Apparently, the act of throwing acid in Mr. Desai's face was never consummated. David Green testified for the state. Also, another man contacted by the appellant for this purpose, James Osborn, testified for the state. The appellant testified in his own behalf.

I.

THE TRIAL JUDGE ERRED BY LEAVING DURING JURY DELIBERATIONS AND APPOINTING A MEMBER OF THE BAR TO ACT IN HIS STEAD.
After appellant's case was submitted to the jury for deliberation and the jury having deliberated for some two hours, Judge Vlahos consulted with the prosecution and defense counsel, advising them that he had to perform a marriage ceremony in a nearby town and needed to be excused. Neither side objected to the trial judge appointing the Honorable Mike Haas, who was a practicing attorney in the county and a youth court referee, to act in his stead. Judge Vlahos instructed Mr. Haas that if the jury acquitted the appellant, he would be discharged, and if convicted, he requested Mr. Haas to advise defense counsel that the court would conduct a sentencing hearing that Friday; also, he advised Mr. Haas that if he was requested to do so he should poll the jury. The trial judge was unable *909 to leave a phone number where he could be contacted during the wedding ceremony.
While Mr. Haas was presiding, the jury sent a note to the court, which read: "We have a problem with interpretation of Instruction S-1. Is there any way to clarify this?" In response, Mr. Haas wrote, "What is your question about Instruction S-1? Please write it out." Neither side objected to this response. The jury responded with another note which read, "Must we believe the defendant to be as involved and as guilty of wanting Desai injured?" At this point defense counsel became concerned and requested Mr. Haas to adjourn court until the following day when Judge Vlahos could consider the matter.
Mr. Haas offered to answer the question in one of several ways and attempted to call Judge Vlahos. Again, defense counsel requested that the jury be dispersed. At this point Mr. Haas brought the jury out and instructed them as to what was happening and instructed them as to their duties on an overnight recess and advised them that Judge Vlahos would take up their questions upon his return the following morning. There was no objection by defense counsel. The jury took an overnight recess and Judge Vlahos took up the jury instruction matters the following morning. After the jury deliberated further, the defendant was found guilty as charged.
After the jury verdict of guilty defense counsel moved for a judgment notwithstanding the verdict or in the alternative a new trial and also sought a mistrial. Defense counsel testified at the sentencing hearing that Mr. Haas had failed to instruct the jury to avoid newspaper, television and radio stories during their overnight recess. Defense counsel testified further that the local television station on its evening news had carried a story stating that the instant case had been put on hold, and showed a mug shot of the appellant and a description of the charges against him and further stated that he had been dismissed from the Bay St. Louis police department.
Defense counsel did not contend or allege that there was any tampering with the jury by anyone, nor was there any proof that any member of the jury actually heard the broadcast in question. Moreover, the jury had been admonished on three previous occasions to avoid publicity concerning the case. Finally, no request for mistrial was made until after the verdict of guilty was returned.
Appellant first argues that since the trial judge delegated some of his duties to Mr. Haas, he violated Article 6, Section 155, Mississippi Constitution 1890, which provides in part, "I will faithfully and impartially discharge and perform all the duties incumbent upon me... ." Appellant relies on Turbeville v. State, 56 Miss. 793 (1879), where this Court noted that if the trial record shows "even a temporary relinquishment of the control of the court and of the conduct of the trial, we should unhesitatingly reverse the judgment." The appellant brings our attention to another old case, Ellerbe v. State, 75 Miss. 522, 22 So. 950 (1898), where the Court reversed a conviction because of the judge's absence.
Appellant's reliance is misplaced. The circumstances of both Ellerbe and Turbeville are distinguishable both factually and procedurally from the case at bar. These cases deal with trial judges who were absent during closing argument. No one can argue with the fact that the closing argument is such an essential part of the trial that any delegation of authority regarding the same would be reversible error. This Court has recognized for over a hundred years as Turbeville made clear, "the conduct and control of the argument within legitimate limits is confined to him [trial judge] as a judicial duty, and cannot be by him devolved upon another." (Emphasis added).
It is well established in Mississippi, however, that the reception of the jury verdict is a ministerial, rather than a judicial act. Burrage v. State, 101 Miss. 598, 58 So. 217 (1912).
*910 In dealing with the question of an absent judge, the following cases found that where there was no timely objection and no showing of prejudice, there was no reversible error: United States v. Pfingst, 477 F.2d 177 (CA 2, 1973); United States v. Boswell, 565 F.2d 1338, (CA 5, 1978); People v. Perry, 115 Mich. App. 533, 321 N.W.2d 719 (1982); People v. Clyburn, 55 Mich. App. 454, 222 N.W.2d 775 (1974); State v. Eberhardt, 32 Ohio Misc. 39, 282 N.E.2d 62 (1972); Peterson v. State, 203 Kan. 959, 457 P.2d 6 (1969); Annot. 34 A.L.R.2d 683 § 6 (1954).
Moreover, appellant failed to timely object to the appointment of the youth court referee to receive the verdict and is therefore precluded from raising the point on appeal. Ratliff v. State, 313 So.2d 386 (Miss. 1975), is here particularly applicable:
[T]he record does not indicate that defendant make any objection to either the judge's statement or his questioning of the witness. The rule is well established that contemporaneous objection is necessary to preserve the right to raise an error on appeal. Pittman v. State, 297 So.2d 888 (1974). In Blackwell v. State, 44 So.2d 409 (Miss. 1950), this Court stated:
It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial. 44 So.2d at 410.
(313 So.2d at 388).
Finally, if there was error, and we find that it was not, such error would have been harmless. The crucial question is whether the appellant was prejudiced by having to take an overnight recess. Defense counsel testified that a local television station mentioned the case on its 10 o'clock report. Appellant complains that the report stated that the case had been put on hold and the appellant had been dismissed from the police department because of his actions. Nowhere in the record does it appear, however, that any juror actually saw the television report. As the trial judge noted in overruling the defense counsel's various motions, the jury was warned at least on three occasions to avoid publicity in the matter. For the foregoing reasons, appellant's first assignment of error is without merit.

II.

THE COURT SHOULD HAVE GRANTED A MISTRIAL BECAUSE OF IMPROPER REMARKS BY THE PROSECUTOR.
During the state's closing argument the state referred to one of the witnesses, James Osborn, as being frightened:
I feel that Sand knew he made a mistake, talking to Osborne because here is a clean-cut kind. We looked at Mr. Green; Mr. Green is a rough, he is mean-looking, but he is worried about that kid, and he threatened him, "Keep out mouth shut, or I'm going to hurt your wife and baby." Now he would have you believe, Sand would have you believe that is not what happened. The argument of counsel is, "well, he didn't do anything about it." The kid is petrified. When I shook his hand for the first time today, I had to grab it to get it down where I could get my hands on it.
At this point appellant objected and the trial court sustained the objection and admonished the jury to disregard the statement. Appellant moved for mistrial, and the court overruled, the motion again admonishing the jury to disregard anything outside the record.
Appellant argues that the prosecutor's remark is prejudicial and cannot be cured by the instruction of the court. He cites Eaton v. State, 200 Miss. 729, 28 So.2d 230 (1946). There, when the prosecutor in his final argument stated that the defendant had come into court and brought some of his kin-folk and a bunch of bootleggers to testify for him, a fact unsupported by the *911 evidence, the court admonished the jury, but failed to call to the attention of the jury the complete absence of evidence supporting this statement. In the case at bar, the trial judge did bring to the attention of the jurors that the prosecutor's statement was unsupported by the evidence.
Where an objection is sustained and the jury admonished to disregard the objected evidence, the jurors are presumed to follow the directions of the court. Johnson v. State, 341 So.2d 660 (Miss. 1977). The statement complained of herein, that a witness was frightened, was hardly significant. The prosecutor was in error when he referred to the witness' shaking before he testified, because the statement was not supported by evidence; the witness did testify, however, that he was frightened. Under the circumstances, the remedial actions of the trial court were sufficient to remove any prejudicial effect on the jury. Whitlock v. State, 419 So.2d 200 (Miss. 1982).
Although this defendant did not receive a perfect trial, it was a fair trial, and we affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.