# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00479-SCT

*WILLIAM GERALD MITCHELL a/k/a WILLIAM*
*JERALD MITCHELL*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 7/24/1998 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL BY: ROBERT RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JUDY T. MARTIN MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | CONO CORANNA |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 08/19/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**


¶1.     Patty Milliken was murdered in Biloxi in 1995. At the time of Milliken's brutal murder, William

Gerald Mitchell had been out on parole from a prior sentence of life in prison for murder. Mitchell was

charged with the capital murder of Milliken committed while being under a sentence of life in prison. A jury

found him guilty and sentenced him to death by lethal injection. This Court affirmed both the conviction and the sentence. ***Mitchell v. State***, 792 So.2d 192 (Miss. 2001), *cert. denied*, 535 U.S. 933, 122 S. Ct. 1308, 152 L. Ed. 2d 218 (2002). Mitchell has now filed an application for leave to seek post-conviction relief in the trial court pursuant to Miss. Code Ann. § 99-39-5. Finding no merit to Mitchell's application, we deny leave to proceed in the trial court.

**FACTS**

¶2.     On November 21, 1995, James Hartley saw William Gerald Mitchell enter the Majik Mart on Popps Ferry Road in Biloxi, Mississippi, three separate times to visit Patty Milliken while she was working her shift. Hartley overheard Milliken refer to Mitchell as "Jerry." When Milliken's shift ended that evening around 8:00 p.m., she and Hartley had yet to document the amount of cash they had placed in the safe that night. Milliken opened the safe and then telephoned her son that she would be home in fifteen minutes. According to Hartley, Milliken walked out of the store with Mitchell to smoke a cigarette and told him (Hartley) that she would be right back. Ten minutes later, Hartley walked outside to ask Milliken a question, but she was not there. Her belongings were inside the store, and her car was in the parking lot.

¶3.     When Milliken had still not returned by 10:00 p.m., Hartley telephoned the police. Hartley gave Milliken's purse to police and showed them where she had written Mitchell's phone number. The police cross referenced the telephone number to a physical address and proceeded to 323 Croesus Street. The police arrived at the residence at approximately midnight and asked to speak to Mitchell. Mitchell ran, and the Biloxi Police Department issued an alert for Mitchell and his vehicle. A police officer later spotted Mitchell at a gas station on U.S. Highway 90. Mitchell again ran, and the police followed in pursuit.

Mitchell was eventually caught and arrested for traffic violations. His passenger testified that Mitchell had stated that he (Mitchell) "got that bitch."

¶4. Patty Milliken's body was found the following morning under a bridge. She had been beaten, strangled, sexually assaulted both vaginally and anally, crushed by a car and mutilated. There was testimony that she was still alive when the car ran over her. Comparison tests conducted police that the tire casts from the area matched three of the four tires on Mitchell's car with regard to tread design and size. Police also found blood and hair on and under Mitchell's car.

## ANALYSIS

### I. Ineffective Assistance of Counsel.

¶5. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A claimant must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984) (citing *Strickland*, 466 U.S. at 687). The focus of the inquiry is on whether counsel's assistance was reasonable considering all the circumstances. *Id*. A reviewing court must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance. Further, one who claims ineffective assistance must overcome another presumption that the challenged act or omission "might be considered sound trial strategy." *Id*. at 477.

3

¶6.     As for the second prong of prejudice to the defense, a reviewing court must determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Mohr v. State***, 584 So.2d 426, 430 (Miss. 1991). This means a "probability sufficient to undermine the confidence in the outcome." ***Id***.

¶7.     In a death penalty case, the ultimate inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently re-weighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death." ***Strickland v. Washington***, 466 U.S. at 695. There is however, no constitutional right then to errorless counsel. ***Mohr v. State***, 584 So.2d at 430. The right to effective counsel does not entitle a defendant to have an attorney who makes no mistakes at trial but simply affords the right to have competent counsel. If the post-conviction application fails on either of the ***Strickland*** prongs, the analysis of that issue ends. ***Davis v. State***, 743 So.2d 326, 334 (Miss. 1999) citing ***Foster v. State***, 687 So.2d 1124, 1130 (Miss. 1996).

        *a.      Mental Retardation as a Mitigating Circumstance.*

¶8.     This Court has held that the "failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." ***Williams v. State***, 722 So.2d 447, 450 (Miss. 1998) (citing ***Williams v. Cain***, 125 F.3d 269, 277 (5th Cir. 1997)). Mitchell argues that trial counsel should have developed and presented evidence of mental retardation during the sentencing phase of the trial. In ***Atkins v. Virginia***, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), the U. S. Supreme Court held that execution of a mentally retarded prisoner violates the prohibition on cruel and unusual punishment in the Eighth Amendment. In the present case, there is no evidence in the record to

4

suggest that Mitchell is mentally retarded within the meaning of *Atkins*. In fact, the record shows that Mitchell served four years in the military and attended college at Mississippi Valley State University for one semester. A clinical psychologist interviewed Mitchell for two hours after his arrest for murder in 1974. Dr. Donald Mathorne wrote that "it was obvious that the patient had at least average intellectual functioning and a significant deficit in cognitive functioning was not noted during the interview." Consequently, trial counsel cannot be faulted for failing to present mitigating evidence which did not exist. This issue is without merit.

### b. Failure to Challenge the Aggravating Circumstance.

¶9. Mitchell next argues that trial counsel failed to challenge the factual basis for charging him with "avoiding arrest." Whether there was a sufficient factual basis for charging this particular aggravating circumstance was raised on direct appeal and soundly rejected.

¶10. This Court held that it was reasonable to conclude that Mitchell repeatedly ran over the victim's body in order to disguise the injuries he head already inflicted and that "there was sufficient evidence that the murder was committed in an effort to avoid lawful arrest." *Mitchell*, 792 So.2d at 220. Mitchell may not now recast the same issue as ineffective assistance of counsel. The issue is procedurally barred from further consideration on collateral review by the doctrine of res judicata. Miss. Code Ann. § 99-39-21(3).

### c. Failure to Challenge Venue.

¶11. Mitchell asserts that counsel was ineffective due to his failure to "actively" seek a change of venue. Since he is an African-American and the victim was white, Mitchell maintains that "it was imperative that he be tried in a county where the racial make-up was more favorable to him." This Court, however, has previously held that "a defendant has no right to a change of venue to a jurisdiction with certain racial demographics". *De la Beckwith v. State*, 707 So.2d 547, 597 (Miss. 1997). Mitchell was entitled only

to a trial by an impartial jury representing a fair cross-section of the community. ***Lanier v. State***, 533 So.2d 473, 477 (Miss. 1988). A motion for a change of venue is not automatically granted in a capital case. There must be a satisfactory showing that a defendant cannot receive a fair and impartial trial in the county where the offense is charged. ***Gray v. State***, 728 So.2d 36, 65 (Miss. 1998). Mitchell has made no such showing.

> ### d. *Failure to Secure a Speedy Trial.*

¶12. Interestingly, this Court held on direct appeal that Mitchell was not denied his right to a speedy trial largely because he was already incarcerated for violating the terms and conditions of his parole. ***Mitchell***, 792 So.2d at 213. Mitchell, on more than one occasion, waived the right to a speedy trial in order to allow defense counsel more time evaluate the physical evidence and even to allow new counsel to become familiar with the case. ***Id***. at 212. Since this Court has already held that Mitchell's defense suffered no prejudice from the delay, it follows that any purported omission by trial counsel in causing the delay could have had absolutely no adverse impact on the outcome of the trial within the meaning of ***Strickland v. Washington***. This issue is without merit.

> ### e. *Demand for Jury Questionnaires.*

¶13. Mitchell's last claim of ineffective assistance is that trial counsel's demand for jury questionnaires was not timely made. The contention that the motion would have been granted if filed earlier is speculative at best since there is no authority requiring jurors to complete such forms. It is equally speculative that the completion of juror questionnaires, if given, would have changed the outcome of the trial. The State correctly points out that this Court has specifically held that absent a requirement to administer questionnaires in capital cases, there is no abuse of discretion on the part of a trial judge who denies such

a motion. *Holland v State*, 705 So.2d 307, 337 (Miss. 1997). In the present case, the record reflects that defense counsel engaged in exhaustive voir dire of the jury pool. This issue is without merit.

## II. Use of the Statutory Aggravating Circumstance at Sentencing.

¶14. Quite simply, Mitchell asserts that use of this aggravating circumstance at the sentencing phase was error because there was no evidence to support a finding that the murder was committed for the purpose of avoiding arrest. As noted in the discussion concerning counsel's alleged failure to challenge this portion of the indictment, it has already been determined by this Court on direct appeal that there was sufficient evidence to support a finding that the murder was committed for the purpose of avoiding arrest. Consequently, further consideration of this issue on collateral review is procedurally barred pursuant to Miss. Code Ann. § 99-39-21(3). This Court specifically held that it was reasonable to conclude that Mitchell repeatedly ran over the victim's body in order to disguise the injuries he had already inflicted and that "there was sufficient evidence that the murder was committed in an effort to avoid lawful arrest." *Mitchell*, 792 So.2d at 220.

## III. Elements of the Aggravating Offense Not Charged in the Indictment.

¶15. Mitchell next asserts that the indictment failed to include the elements of the underlying and aggravating offense (avoiding arrest) which raised the charge to a capital offense. This Court has previously considered and rejected this assertion. Mitchell relies on the rulings of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), in which the Court held unconstitutional a sentencing scheme where a judge rather than a jury determined whether there were sufficient aggravating circumstances to warrant imposition of the death penalty.

¶16. Apprendi fired several shots into the home of an African-American family in New Jersey and was indicted on state charges of shooting and possession of firearms. He pled guilty to two counts of possession of a firearm for unlawful purpose and one count of possession of an explosive. After the judge accepted the guilty pleas, the prosecutor moved for an enhanced sentence on the basis that it was a hate crime. Apprendi argued that he was entitled to have the finding on enhancement decided by a jury. The Supreme Court agreed, stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

¶17. However, the Court specifically stated that "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." *Id.* at 477 n.3. The U.S. Supreme Court found in *Apprendi* that New Jersey's statutory scheme would allow a jury to convict a defendant of a second degree offense of possession of a prohibited weapon, and then, in a separate subsequent proceeding, allow a judge to impose a punishment usually reserved for first degree crimes made on the judge's finding based on a preponderance of the evidence.

¶18. In 2002, the U.S. Supreme Court decided *Ring v. Arizona*. *Ring* addressed the issue of whether the Arizona capital sentencing process as upheld in *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990), that of a jury deciding guilt and a judge making findings on aggravating factors, could survive the *Apprendi* decision. The Supreme Court decided it could not.

> [W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S., at 647-649, 110 S.Ct. 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi*, 530

8

U.S., at 494, n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.

*Ring*, 536 U. S. at 609.

¶19.     Mitchell contends that the U.S. Supreme Court necessarily adopted every other rule stated in *Apprendi* for state capital sentencing proceedings, specifically the rule that the Constitution requires that aggravating factors be listed in indictments.  The Court in *Ring* specifically noted the narrow issue being decided.  "Ring's claim is tightly delineated:  He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him." *Id.* at 597 n.4.  Ring did not contend that his indictment was constitutionally defective.

¶20.     Further, the retroactive application of *Ring* was recently rejected in *Schriro v. Summerlin*, 124 S. Ct. 2519, 2526 (2004), where the Supreme Court held that the holding in *Ring* was procedural and therefore did not apply retroactively to death penalty cases already final on direct review.

¶21.     The State is correct in its assertion that a defendant is not entitled to formal notice in the indictment of the aggravating circumstances to be employed by the prosecution and that an indictment for capital murder puts a defendant on sufficient notice that the statutory aggravating factors will be used against him. *Smith v. State*, 729 So.2d 1191, 1224 (Miss. 1998) (relying on *Williams v. State*, 445 So.2d 798 (Miss. 1984).  We have stated:

> We believe that the fact that our capital murder statute lists and defines to some degree the possible aggravating circumstances surely refutes the appellant's contention that he had inadequate notice.  Anytime an individual is charged with murder, he is put on notice that the death penalty may result.  And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment.

*Williams*, 445 So.2d at 804-05.  Consequently, this issue is without merit.

9

## IV. Alleged Fourth Amendment Violation.

¶22.   Mitchell argues that police unlawfully came to the residence of his grandfather without probable cause so as to deprive him of a fair trial and due process. On direct appeal, this Court thoroughly considered and rejected the issue of police trespass. The issue is now procedurally barred by the doctrine of res judicata from further consideration on collateral appeal. Miss. Code Ann. § 99-39-21(3).

¶23.   As for the merits of the claim, this Court found that when Mitchell initially ran from police, "the requisite suspicion existed to allow officers to stop and detain Mitchell temporarily for questioning. Once he fled the officers and ignored their commands to halt, the officers, already possessing reasonable suspicion, also obtained probable cause." *Mitchell*, 792 So.2d at 204. This Court further held that the first investigating officer "was in an area of common use" and that "[a]n illegal trespass by the police did not occur in this case." *Id.* at 206. This issue is without merit.

## V. Mental Retardation.

¶24.   The U.S. Supreme Court has held the death penalty to be "excessive" as applied to mentally retarded inmates and that the Constitution "places a substantive restriction on the State's power to take the life" of a mentally retarded prisoner. *Atkins v. Virginia*, 536 U.S. at 321. The Court found that there existed a national consensus which called into question "the relationship between mental retardation and the penological purposes served by the death penalty." *Id.* at 317. The Court recognized that "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." *Id*. Mild mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70.

¶25.    In *Foster v. State*, 848 So.2d 172, 174 (Miss. 2003), Ron Chris Foster had an IQ score of 62 and a psychiatrist stated that the score was "consistent with a diagnosis of mental retardation." This Court granted leave to proceed in the trial court on the issue of mental retardation. In *Russell v. State*, 849 So.2d 95 (Miss. 2003), Willie Russell was found by one doctor to have a full scale IQ of 68, which indicated that Russell was functioning within the upper range of the mildly mentally retarded category of intelligence. However, another doctor testified that Russell's IQ was 76, "borderline to low normal," and that he was not retarded. Russell too was granted leave to proceed on this issue.

¶26.    In *Goodin v. State*, 856 So.2d 267 (Miss. 2003), Howard Goodin presented evidence which showed that he had a verbal IQ of 65, a performance IQ of 60, for a full scale IQ 60 on the Wechsler Test. Goodin also produced school records showing poor performance and affidavits from relatives discussing his strange behavior. This Court granted Goodin leave to proceed in the trial court on this issue.

¶27.    In the present case, there is no evidence in the record to suggest that Mitchell is mentally retarded within the meaning of *Atkins v. Virgina*. In fact, the records show that Mitchell served four years in the military and attended college at Mississippi Valley State University for one semester. A clinical psychologist interviewed Mitchell for two hours after his arrest for murder in 1974. Dr. Donald Mathorne wrote that "it was obvious that the patient had at least average intellectual functioning and a significant deficit in cognitive functioning was not noted during the interview."

¶28.    Further, this Court recently held in *Chase v. State*, 873 So. 2d 1013 (Miss. 2004), that defendants with an IQ of 76 or above are not entitled to protection under *Atkins*. The Court held that it was incumbent upon a petitioner claiming mental retardation to produce an expert opinion that the defendant possessed an IQ of 75 or below and that there is a reasonable basis to believe that further testing

11

would show the defendant to be mentally retarded. No such showing has been made in Mitchell's application for post-conviction relief. This issue is without merit.

### VI. Manslaughter as a Lesser-Included Offense.

¶29. Mitchell continues to argue that it was error on the part of the trial court not to instruct the jury on the lesser-included offense of manslaughter. Mitchell contends that the instruction was supported by evidence which purportedly showed that the killing was committed in the heat of passion. This issue was raised on direct appeal and rejected by this Court. The issue is now res judicata and procedurally barred from further consideration. Miss. Code Ann. § 99-39-21(3).

¶30. Further, jury instructions will not be given unless there is an evidentiary basis for them. *Burns v. State*, 729 So.2d 203, 225 (Miss. 1998). In the present case, this Court specifically found that there was "[n]o evidence presented at trial Mitchell had displayed heat-of-passion emotions." *Mitchell*, 792 So.2d at 219. We explained:

> In an act of premeditation, Mitchell took Milliken to the area under the bridge, beat and strangled her, ran over her, and eventually killed her by crushing her skull with his vehicle. As this Court stated in *Berry v. State*, 575 So.2d 1, 12 (Miss.1990), "No reasonable hypothetical juror could find that this killing was without malice"; therefore, the defendant "was not entitled to a manslaughter instruction." Mitchell's actions were not without malice. Therefore, a manslaughter instruction was not appropriate in this case.

*Mitchell*, 792 So. 2d at 219. This issue is without merit.

### VII. Setting the Execution Date.

¶31. Mitchell asserts that his death sentence may not be imposed until his finishes serving his prior life sentence. He relies on Miss. Code Ann. § 47-7-29 (Rev. 2000) which provides:

> Any prisoner who commits a felony while at large upon parole or earned-release supervision and who is convicted and sentenced therefor shall be required to serve such sentence after the original sentence has been completed.

12

Notably, Mitchell cites no authority for this unusual interpretation of the statute. As a practical matter, the record does not indicate Mitchell's parole was ever revoked so as to have his earlier sentence re-imposed. Further, Mitchell has been convicted of a capital offense and Miss. Code Ann. § 99-19-106 clearly provides that execution shall be set on motion of the State after all state and federal remedies have been exhausted. This issue is without merit.

### VIII. Speedy Trial Claim.

¶32. This issue was raised on direct appeal and rejected by this Court following a very lengthy and thorough consideration. The issue is now procedurally barred from further consideration. Miss. Code Ann. § 99-39-21(3). This Court specifically found that despite a delay of 970 days, Mitchell requested at least three continuances and failed to timely assert the right to a speedy trial. Nor did this Court find that the delay resulted in any prejudice to the defense. This Court thereafter concluded that "[a]fter careful review of the facts of this case and the Barker factors", Mitchell's right to a speedy trial was not violated. *Mitchell*, 792 So.2d at 213. This issue is without merit.

### IX. Cumulative Error.

¶33. It is true that this Court may reverse a conviction or sentence based upon the cumulative effect of errors which independently would not require reversal. *Jenkins v. State*, 607 So.2d 1171, 1183-84 (Miss. 1992). However, it is equally true that where "there was no reversible error in any part, so there is no reversible error to the whole." *McFee v. State*, 511 So.2d 130, 136 (Miss. 1987). "A criminal defendant is not entitled to a perfect trial, only a fair trial." *McGilberry v. State*, 741 So.2d 894, 924 (Miss. 1999) (citing *Sand v. State*, 467 So.2d 907, 911 (Miss. 1985)). The record reflects that Mitchell received a fair trial. This issue is without merit.

### CONCLUSION

13

¶34.  For these reasons, we deny Mitchell's application for leave to seek post-conviction relief.

¶35.  **APPLICATION FOR LEAVE TO SEEK POST-CONVICTION RELIEF IS DENIED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**