VAN SLYKE VS. TREMPEALEAU COUNTY FARMERS' MUTUAL FIRE INSURANCE COMPANY.

CONSTITUTIONAL LAW. TRIAL BY NON JUDEX. *(1) Limitation of legislative power as to conferring judicial jurisdiction. (2) Act permitting trial by a member of the bar of this court in certain cases, void. (3) Presumption from record in such a case. (4) Judgments of judges de facto, distinguished. (5) Reversal of judgment for mistrial.*
CHANGE OF VENUE. *(6) How question of judge's prejudice to be raised.*

1. The constitution of this state having vested all judicial jurisdiction in courts and justices of the peace, and provided for the election of judges of all courts, the legislature can confer no judicial jurisdiction on other officers or persons, excepting power not exceeding that of a circuit judge at chambers, on court commissioners.

2. Ch. 69, Laws of 1870, which authorizes parties to avoid a change of venue for prejudice of the circuit judge, by stipulating that a member of the bar of this court shall act as judge in the case, with all the powers and duties of a circuit judge, is void.

3. On appeal from a judgment signed by the clerk, where the record here shows that on the trial of the cause in the court below the judge of that court left the bench, and that his place was assumed by another person, a member of the bar of this court, but not a judge, who tried the cause, and upon whose consideration the judgment was rendered, this court cannot *presume* that such judgment rests upon a proper trial of the issue, but must treat the proceeding as *coram non judice,* and the judgment as void.

4. *In re Boyle,* 9 Wis., 264; *State v. Bloom,* 17 id., 521; and *Laver v. McGlachlin,* 28 id., 361, in which the court upheld the judgments of judges *de facto,* and not *de jure,* distinguished from this case, in which the person who tried the cause was not in possession of the office of judge, and did not claim it.

5. The judgment, having proceeded upon a mistrial, and not being a proper judgment of the court below, whether it is void or voidable, must be reversed.

6. Whether the petition of a party to an action, representing the judge to be related to the parties and necessarily and insensibly prejudiced in the case, but not praying a change of venue, properly raises the question of prejudice, is not here decided.

APPEAL from the Circuit Court for *Trempealeau* County.

Van Slyke vs. Trempealeau County Farmers' Mutual Fire Ins. Co.

Action for a loss by fire, under an alleged agreement for insurance. Plaintiff presented to the court a petition representing that the judge, by reason of relationship to the parties, was insensibly prejudiced in the case; whereupon the parties stipulated for a trial before John J. Cole, Esq., a member of the bar of the supreme court.* ·

The bill of exceptions states that the action " came on for trial before John J. Cole, Esq., a counselor of the supreme court of this state, who sat as judge to try the case by stipulation of the parties, and a jury, at the April term of the court," etc.; and it is signed "John J. Cole, Counselor, acting as Judge."

The plaintiff had a verdict and judgment; and the defendant appealed.

*A. W. Newman*, for appellant.

*G. Y. Freeman*, for respondent.

Ryan, C. J. Mere imputation of prejudice to the circuit judge, made in proper time by either party to a civil action, entitles the party making it to a change of the venue. Ch. 123, sec. 8, R. S.; ch. 206 of 1862. With a view, doubtless, of mitigating such inconvenience, ch. 69 of 1870 authorizes the parties to avoid change of the venue on that ground, by stipulating that a member of the bar of this court shall act as judge in the cause, with all the powers and duties of the circuit judge.

Such a statute might work well. But we cannot consider

---

* Ch. 69, Laws of 1870, amended the statute directing a change of venue upon petition of a party showing prejudice of the judge, by adding thereto the following: " Unless the parties to said action, by themselves or their attorneys, shall make and file with the clerk of the court in which said cause is pending, a written stipulation agreeing that some member of the bar of the supreme court of Wisconsin act as judge in said cause; and in that case the place of trial of such action shall not be changed, but the party so agreed upon may act as judge in said cause, and shall have all the powers and perform all the duties of the judge of said court in said cause."

it competent under the constitution. That instrument vests all judicial jurisdiction in courts and justices of the peace, and provides for the election of judges of all courts; and the legislature can confer none on other officers or persons, excepting power not exceeding that of a circuit judge at chambers, on certain officers now called court commissioners. *Att'y Gen. v. McDonald*, 3 Wis., 805; *Gough v. Dorsey*, 27 id., 119; *Conroe v. Bull*, 7 id., 408. So manifest is this intent to distribute and restrict the exercise of judicial authority by express grant, that the framers of the constitution deemed it necessary to give express authority to the judge of one circuit to hold court in another. The statute in question was well intended, but obviously overlooked the constitutional restriction. It seems too manifest for discussion that, under the constitution, no one can hold a circuit court but a circuit judge. Certainly not a court commissioner, who can only act as circuit judge at chambers. *A fortiori*, not one holding no judicial office: a gentleman of the bar assuming no judicial office, but merely chosen by the parties to an action to act as a sort of judicial arbitrator in it. If the statute before us could be upheld, we do not see why one could not which should assume to give to the parties, in all actions, in all courts, power to stipulate the judges off the bench, and private persons into their seats. Judicial power is one of the attributes of sovereignty, necessarily delegated in its exercise. The constitution does not leave the delegation loose at the discretion of the legislature. It delegates the judicial power to constitutional courts, to be held by constitutional judges. And these constitutional judges take no power from the constitution, can take none from the legislature, to subdelegate their judicial functions. See the instructive case on this subject of *Cohen v. Hoff*, 3 Brevard, 500.

The respondent petitioned the court below, representing the judge to be related to the parties and necessarily and insensibly prejudiced in the case, but not praying change of the

venue. We give no opinion whether the petition properly raised the question of prejudice. The learned judge himself evidently thought that it did.

The parties thereupon filed a stipulation that Mr. Cole, a member of the bar of this court, should act as judge on the trial of the cause; and the court below made an order, reciting the petition for prejudice, and ordering the cause to be tried before Mr. Cole as judge of the court, in accordance with the statute.

The trial appears to have taken place before Mr. Cole and a jury, who found for the respondent. There is in the record what purports to be a bill of exceptions and an order refusing a new trial, signed by Mr. Cole. The judgment is signed by the clerk, with a statement at its head that Mr. Cole sat as judge on the trial.

We cannot look into the bill of exceptions or consider the order denying a new trial, because both are unofficial and devoid of judicial authority. They are as any other irrelevant papers finding their way by accident or mistake into the record of a cause. And the only question for us is, whether we should hold the judgment supported by a presumption that it rests upon a proper trial of the issue, or should consider it as rendered by Mr. Cole, and therefore not properly the judgment of the court below.

We cannot doubt that the latter is the proper view. All judgments are by the consideration of the court. *Judicia in deliberationibus maturescunt.* The judicial mind goes to all judgments, either by particular consideration or by general consideration established by rule. There must be actual or constructive consideration of the judge of the court. *Judicium est quasi juris dictum.* And it is the voice of the judge only which is the voice of the law. *Judex est lex loquens.* And we cannot close our eyes to the truth so patent in this record, that, in compliance with the statute before us, the learned judge of the court below abdicated his judicial office

and function, for this cause, in favor of Mr. COLE. And it was by consideration of Mr. COLE, not of the circuit judge, that this judgment went. Indeed, with the suggestion uncontroverted that the judge was related to the parties, we do not see how he could well sit in the cause. R. S., ch. 123, sec. 7. Be that as it may, the record discloses that he left the bench and Mr. COLE took his place upon it, assumed his duties in the cause, and tried it; and that upon Mr. COLE's *quasi* judicial consideration and voice only, this judgment was rendered. It was literally *coram non judice*.

This phrase is commonly applied directly to the court itself. But it applies, in its proper sense, to a court not having jurisdiction of a matter, only because the judge is, *quoad hoc*, not a judge. And the judge *de jure et de facto* of a court not having jurisdiction of a cause in it, is, for that cause, like a private person assuming to exercise judicial functions over it. "When the court has not jurisdiction of the cause, there the whole proceeding is *coram non judice*, .... and therefore the said rule .... *qui jussu judicii aliquod fecerit* (but when he has no jurisdiction, *non est judex*) *non videtur dolo malo fecisse, quia parere necesse est*, was well allowed, but it is not of necessity to obey him who is not judge of the cause, no more than it is a mere stranger, for the rule is, *judicium a non suo judice datum nullius est momenti*." *Marshalsea case*, 10 Rep., 68 b, 76 a; cited and approved in *Taylor v. Clemson*, 2 Ad. & E., N. S., 978. "It is the same as though there was no court. It is *coram non judice*." *Grumon v. Raymond*, 1 Conn., 40. So, because the jurisdiction of a court can be exercised only by the judge *de facto* of the court, the judge of a court not having jurisdiction is likened to a stranger assuming to exercise the jurisdiction of a court having it; the proceeding in both cases being *coram non judice*. The rule as given in Fleta, following Bracton, applies very closely to this case. It is there said, in substance, that no one can proceed judicially to whom regular jurisdiction has not

been delegated by the king himself; and that no other can control the power of the county or punish for contempt (contumacy) except one on whom judicial power has been conferred, not by a judge, but by the king himself, for that even a *praetor* could not substitute judges under him, because the judgments of such would be of no effect.* *Sententia enim a non judice lata nemini debet nocere.* Fleta, book 6, ch. 6., secs. 6, 7. So, we are told by Coke that even when the king personally sat in the King's Bench, "the judicature only belongeth to the judges of that court;" and that they "have supreme authority, the king himself sitting there as the law intends." And he calls them sovereign justices. 4 Inst., 73. If the king himself, sitting in his own court, held *coram ipso rege*, could not exercise its judicial power, surely no private subject of his could. "*Judicium* is derived *a jure et dicto, et est quasi juris dictum*" (3 Inst., 210); and it is only the appointed judge who can speak the authoritative word of the law. Mr. Cole might pronounce the law as well as any of us; it is not that he wanted ability, but that he wanted authority. His voice could not utter *juris dictum, quia non est judex.* "He was not judge *de jure* or *de facto*, and therefore all his acts-as such are void." *Frame v. Trebble*, 1 J. J. Marsh., 205. See Broom's Leg. Max., 69.

There is a quaint relish of poetry in the way of putting the sovereign delegation of judicial function in *Martin v. Marshall*, Hob., 63. "All kingdoms in their constitution are with the power of justice, both according to the rule of law and equity; both which, being in the king as sovereign, were after settled in several courts; as the light, being first made by God, was after settled in the great bodies, the sun and

---

* Nullus summ' potest cui jurisdictio ordinaria per ipsum Reg' non delegatur, nec alius cohertionem com' habebit, nec contumaciam punire poterit quis nisi ipse cui datur judic' authoritas et non per judicem delegatum sed per ipsum Reg'; Praetor enim judic' sibi non poterit subdelegare, quia sententiæ taliû nullius sunt effectus.

moon. But that part of equity being opposite to regular law, and in a manner an arbitrary disposition, is still administered by the king himself and his chancellor, in his name *ab initio,* as a special trust committed to the king, and not by him to be committed to any other." With all deference to that great judge, it might perhaps be suggested that here is a slight in-accuracy of constitutional law, celestial and terrestrial. For there does not appear to be any radical distinction in the del-egation of equitable jurisdiction and of legal jurisdiction. Equity never rested in mere discretion of king or chancellor. And it is certainly contrary to the received notion, that the moon shines as a luminary *per se,* like the sun. Taking the sun and moon according to the common acceptation, and fol-lowing Hobart's metaphor, the circuit judge might be likened to the sun of the court below, in this cause, and Mr. COLE to the moon, after the fashion of a juridical depute in Scot's law, shining with delegated jurisdiction. But the constitution mars the comparison. For by the astronomical constitution the sun appears to take power to delegate his functions of lighting the world; while the state constitution tolerates no such delegation, and appoints a sun only, without any moon, as luminary of the circuit court, whose "gladsome light of juris-prudence" must be sunshine only, not moonshine. Commis-sioners, masters, referees, and like judicial subordinates, may share in judicial labor and lighten it; but they cannot change places with the judge on the bench or share in the final judg-ments of the court.

We do not forget that this court has upheld the judgments of judges *de facto,* not *de jure,* in *Re Boyle,* 9 Wis., 264; *State v. Bloom,* 17 id., 521; *Laver v. McGlachlin,* 28 id., 364. But in all these cases the person acting as judge held the office under color of title. So the court says in *Re Boyle:* " Every person assuming to exercise the authority of an officer, does not thereby necessarily make himself an officer *de facto.* But when it appears that the person exercising the powers of

an office, is in by such a color of right, and that he has such possession of the office, as makes him an officer *de facto*, then his acts as to third persons are valid, and his right to hold the office can only be inquired into in some direct proceeding for that purpose." Here, Mr. Cole was not in possession of the office of judge, and did not claim it. He only accepted a delegation of its functions *pro hac vice*, acting for the circuit judge in some sort as a *judex pedaneus* of the Roman law. And those cases are quite in accord with this.

The judgment plainly proceeded upon a mistrial, which cannot support it; and the judgment itself is plainly not a proper judgment of the court below. Whether void or voidable, it should be reversed. *Sayles v. Davis*, 20 Wis., 302; *Hays v. Lewis*, 21 id., 663.

*By the Court.* — The judgment of the court below is reversed, and the cause remanded for trial according to law.