**2025 WI 52**

# Supreme Court of Wisconsin



WISCONSIN BUSINESS LEADERS FOR DEMOCRACY ET AL.,
*Plaintiffs,*

*v.*

WISCONSIN ELECTIONS COMMISSION ET AL.,
*Defendants,*

GLENN GROTHMAN ET AL.,
*Intervening Defendants.*

No. 2025XX1330
Filed November 25, 2025

The Court entered the following order on this date:

On July 10, 2025, this court received written notice from the Dane County Clerk of Courts of the filing of a summons and complaint on July 8, 2025, by Wisconsin Business Leaders for Democracy and a group of individual voters (collectively, "WBLD") against the Wisconsin Elections Commission et al. (collectively, "WEC"). The complaint alleges that Wisconsin's current congressional map violates the Wisconsin Constitution in various respects. The Dane County Clerk of Courts enclosed a copy of the summons and complaint in its July 10, 2025 written notice to this court. This court opened miscellaneous Case No. 2025XX1330 to receive these filings.

In its letter, the Dane County Clerk of Courts office stated that it was notifying this court of the filing of WBLD's summons and complaint pursuant to WIS. STAT. § 801.50(4m), which states that "[n]ot more than 5 days after an action to challenge the apportionment of a congressional or state legislative district is filed, the clerk of courts for the county where the action is filed shall notify the clerk of the supreme court of the filing." This section further states that "[v]enue of an action to challenge the appointment of any congressional or state legislative district shall be as provided in s. 751.035." WISCONSIN STAT. § 731.035(1) states that "[u]pon receiving notice under s. 801.50(4m), the supreme court shall appoint a panel consisting of 3 circuit court judges to hear the matter. The supreme court shall choose one judge from each of 3 circuits and shall assign one of the circuits as the venue for all hearings and filings in the matter."

On September 25, 2025, this court entered an order requiring the parties to submit simultaneous briefs and response briefs addressing "whether WBLD's complaint filed in the circuit court constitutes 'an action to challenge the apportionment of a congressional or state legislative district' under WIS. STAT. § 801.50(4m)." The court received and granted motions by Billie Johnson and other individual voters (collectively, "Johnson") and the Wisconsin Legislature for leave to file non-party briefs amicus curiae. The court also received and granted a motion to intervene filed by a group of Congressmen and individual voters (collectively, the "Congressmen"). The briefing subsequently received by the court may be briefly summarized as follows:

The WBLD plaintiffs argue that their complaint clearly constitutes "an action to challenge the apportionment of any congressional or state legislative district" for purposes of WIS. STAT. § 801.50(4m). This is so given that, in various cases over many years' time, this court has used the terms "redistricting," "apportionment," and "reapportionment" interchangeably to mean redrawing Wisconsin's congressional and state legislative districts so as to comply with state or federal law. The court's use of these terms interchangeably comports with Wisconsin Constitution Article IV, Section 3, which labels the state legislative redistricting process "Apportionment" in its title and describes the legislature's task as to "apportion and district" anew. Moreover, cases interpreting an analogous federal statute, 28 U.S.C. § 2284, which requires appointment of three-judge panels to hear

"apportionment" challenges in federal courts, consistently use the terms "apportionment" and "redistricting" interchangeably. Given the above, the WBLD plaintiffs argue, their complaint plainly falls within the scope of § 801.50(4m), thus requiring this court to appoint a three-judge panel and designate a circuit court venue pursuant to § 751.035.

The Congressmen, the Legislature, and the amici generally argue that WBLD's complaint does not fall within the scope of WIS. STAT. § 801.50(4m) because the complaint is not an "apportionment" challenge, which they define narrowly as a challenge to the distribution of legislative seats among districts. WBLD's complaint is instead a "redistricting" challenge, which they define narrowly as a challenge to district boundaries. In their view, the non-synonymous nature of the terms is confirmed by the Wisconsin Constitution, which uses the terms "apportion" and "district" in a single section (WIS. CONST. ART. IV, § 3), indicating that the terms have distinct meanings.  Moreover, these parties argue, "apportionment" refers only to legislative action, not the remedial judicial action that this court took in *Johnson v. WEC*, 2022 WI 14, 400 Wis. 2d 626, 971 N.W.2d 402 ("*Johnson II*") of adopting Wisconsin's current congressional map.  Because WBLD's lawsuit is not an "apportionment" challenge, these parties submit, the court should not appoint a three-judge panel. Instead, the court should employ its superintending authority and dismiss WBLD's complaint, as the suit constitutes an improper collateral attack on *Johnson II* that a lower court is in no position to adjudicate.

The defendants—WEC, its members, and its administrator—filed a statement explaining that it takes no position on the question posed.

We conclude that WBLD's complaint does constitute "an action to challenge the apportionment of any congressional or state legislative district" for purposes of WIS. STAT. § 801.50(4m). We acknowledge, as noted by the parties, that in *Jensen v. Wisconsin Elections Bd.*, 2002 WI 13, 249 Wis. 2d 706, 639 N.W.2d 537, we stated in a footnote, without citation, that "[r]eapportionment is the allocation of seats in a legislative body where the district boundaries do not change but the number of members per district does (e.g., allocation of congressional seats among established districts, that is, the states); redistricting is the drawing of new political boundaries[.]" *Id.*, ¶5 n.2. But this statement did not address the meaning of § 801.50(4m)—a

statute that did not exist until nearly 10 years after the *Jensen* decision. Were we to view *Jensen* as dispositive of the meaning of the term "apportionment" in § 801.50(4m)—such that here, the term would refer only to the allocation of congressional seats to Wisconsin—it is difficult to conceive of any state-court "action to challenge the apportionment of any congressional . . . district" to which § 801.50(4m) would apply, as "apportionment" in that sense occurs only at the federal level, not the state level. *See* U.S. CONST. art. I, § 2, cl. 3. We decline to adopt such a cramped reading of the statute, particularly given that neither we nor other courts have consistently used the term "apportionment" in such a limited sense. *See, e.g., Jensen*, ¶5 n.2 (noting that "[t]he cases . . . sometimes use the terms 'reapportionment' and 'redistricting' interchangeably"); *see also Shapiro v. McManus*, 577 U.S. 39, 43 (2015) (noting, in the context of a partisan gerrymandering challenge to a state's congressional redistricting plan, that "[n]obody disputes that the present suit is 'an action. . . challenging the constitutionality of the apportionment of congressional districts'" for purposes of 28 U.S.C. § 2284(a)). We also reject as unsupported the suggestion in the briefing that "apportionment" refers only to legislative action, not judicial action. *See Growe v. Emison*, 507 U.S. 25, 34 (1993) (stressing that "*both* state branches"—state legislatures and state courts— are appropriate "agents of apportionment")(emphasis in original); *see also Chapman v. Meier*, 420 U.S. 1, 14 (1975) (describing review of a court-ordered reapportionment plan as "regular grist" for a three-judge panel appointed under 28 U.S.C. § 2284(a)).

Because WBLD's complaint constitutes an "action to challenge the apportionment of a congressional or state legislative district" within the meaning of § 801.50(4m), this court is required to appoint a three-judge panel and to select a venue for the action pursuant to § 751.035. Therefore,

IT IS ORDERED that pursuant to WIS. STAT. § 751.035, the court appoints the following judges from the following circuit courts to a three-judge panel to hear the matter:

> The Hon. David Conway, Dane County Circuit Court;
> The Hon. Patricia Baker, Portage County Circuit Court; and
> The Hon. Michael Moran, Marathon County Circuit Court.

IT IS FURTHER ORDERED that pursuant to WIS. STAT. § 751.035, the venue for all hearings and filings in this matter shall be the Circuit Court for Dane County.

BRIAN K. HAGEDORN, J., concurring in part and dissenting in part.

The question before us at this stage is a narrow one, and it does not involve whether the petitioners have valid claims or can obtain their requested relief. The issue is simply whether this court should appoint a three-judge panel pursuant to WIS. STAT. § 801.50(4m) and § 751.035. As the court's order explains, I conclude these statutes apply to this case, and a panel must be appointed.

I disagree, however, with how this court is fulfilling its statutory mandate. WISCONSIN STAT. § 801.50(4m) provides a unique venue selection mechanism for actions challenging "the apportionment of any congressional . . . district," and directs us to WIS. STAT. § 751.035. That section then sets forth procedures to provide both a new location and a new judicial decision-maker. These statutes are transparently designed to prevent forum shopping in disputes over where congressional lines should be drawn. To avoid litigants simply choosing their preferred venue and judge, the statute requires the appointment of a three-judge panel with each judge coming from a different judicial circuit, and then requires that venue be assigned to one of those circuits. WIS. STAT. § 751.035.

Given the nature of this case and the statute's implicit call for geographic diversity and neutrality, a randomly-selected panel and venue would be a better way to fulfill the statutory mandate. Instead, my colleagues have chosen to keep this case in Dane County and leave the originally assigned Dane County judge on the panel. The court has also hand-selected two additional judges rather than using a neutral process. To be clear, I am not suggesting the judicial panel will fail to do its job with integrity and impartiality. But this approach is an odd choice in the face of a statute so clearly designed to deter litigants from selecting their preferred venue and judge.

I also write to respond to the entreaty from the Congressmen, the Legislature, and the amici that we use our superintending authority to seize this case from the circuit court, exercise independent jurisdiction, and dismiss it on the merits. This request is not without force given the unique posture of this case. The petitioners here make the rather extraordinary plea for the circuit court to declare a 2022 decision and order of this court unconstitutional.[1] That said, these issues are not yet ours to decide. Our role

---

[1] In *Johnson v. WEC*, we adopted a remedial congressional district map and declared it constitutionally compliant. 2022 WI 14, ¶¶25, 52, 400 Wis. 2d 626, 971

at this stage is limited—dealing only with the statutory mandate to appoint a three-judge panel which is then empowered to adjudicate the petitioners' claims. To be sure, the Congressmen, the Legislature, and the amici raise legal roadblocks that must be reckoned with. But setting the precedent that this court should swoop in and shut down a case before it ever gets to us is not a door we should open. The circuit court panel will consider all the relevant substantive and procedural arguments in due course, and I would give it that opportunity. I therefore concur in the court's order appointing the panel, but I disagree with the method the court uses to appoint the panel and select venue.

---

N.W.2d 402 ("*Johnson II*"). However, I express no opinion at this stage on the merits of any new claims that were not raised in our prior litigation.

ANNETTE KINGSLAND ZIEGLER, J., dissenting.

Today, my colleagues—disregarding the United States Constitution, the Wisconsin Constitution, and fundamental legal principles—approve a collateral attack of our court's decision by a panel of circuit court judges, unsupported in the law and barred by laches. The majority not only undermines our constitutional authority and circumvents established redistricting precedent[1] but also, again, usurps the legislature's constitutional power. In allowing this litigation to proceed, the majority abdicates its constitutional superintending authority to Wisconsin's circuit courts.

Compounding the constitutional problems which prohibit a circuit court panel from reconsidering or overturning our decisions, the selection process for this hand-picked panel lacks even a hint of transparency. Behind closed doors,[2] my colleagues chose three circuit court judges to consider apportioning, not redistricting, court-established congressional maps—something this panel is not constitutionally empowered to do. This action is barred by laches and is contrary to the Wisconsin Constitution and the Elections Clause of the United States Constitution. Under our state constitution and the United States Constitution, map-drawing authority lies with the legislature alone. And, our court has repeatedly declined to reconsider its adoption of Governor Evers' congressional maps in *Johnson v. WEC*, 2022 WI 14, 400 Wis. 2d 26, 971 N.W.2d 402 ("*Johnson II*").[3]

---

[1] *Johnson v. Wisconsin Elections Commission*, No. 2021AP1450-OA, decided by this court during its 2021-22 term. *See Johnson v. WEC*, 2021 WI 87, 399 Wis. 2d 623, 967 N.W.2d 469 ("*Johnson I*"); *Johnson v. WEC*, 2022 WI 14, 400 Wis. 2d 626, 971 N.W.2d 402 ("*Johnson II*"), *summarily rev'd sub nom. Wis. Legislature v. Wis. Elections Comm'n*, 595 U.S. 398 (2022) (per curiam); and *Johnson v.* WEC, 2022 WI 19, 401 Wis. 2d 198, 972 N.W.2d 559 ("*Johnson III*").

[2] It appears "behind closed doors" is how the "court of four" conducts unseemly court business. *See* S. Ct. Order 25-02, 2025 WI 51 (issued Nov. 25, 2025; eff. Sept. 16, 2025), ¶¶1-4, 8-23 (Annette Kingsland Ziegler, J., dissenting in part).

[3] On March 9, 2022, the Congressmen intervenors-petitioners in *Johnson II*, 400 Wis. 2d 626, Glenn Grothman, et al., filed an Emergency Application for Stay Pending Petition for Writ of Certiorari with the United States Supreme Court ("SCOTUS") challenging this court's adoption of Governor Evers' congressional districting maps. On March 23, 2022, SCOTUS denied the Congressmen's request. *Grothman v. WEC*, 142 S. Ct. 1410 (2022). Also on March 23, 2022, the same Congressmen intervenors-petitioners filed a motion requesting that this court reconsider its March 3, 2022 decision. On April 15, 2022, we denied this challenge

While we were forced to act in the *Johnson* cases due to the impasse between the legislature and the governor, we are not faced with any such constitutional crisis here. This panel is not apportioning maps that the

---

to the congressional maps. *Johnson v. WEC*, No. 2021AP1450-OA, unpublished order (Wis. Apr. 15, 2022) ("[T]he motion . . . for reconsideration of this court's March 3, 2022 opinion and order . . . is denied.").

In August, 2023, less than one year after the fall 2022 election, two petitions for leave to commence an original action were filed challenging the *state legislative* maps adopted in *Johnson III*, 401 Wis. 2d 198. *Clarke v. WEC*, No. 2023AP1399-OA (filed Aug. 2, 2025); *Wright v. WEC*, No. 2023AP1412-OA (filed Aug. 4, 2025). No challenge was made to the congressional maps at that time.

In January 2024, shortly after this court issued its decision in *Clarke v. WEC*, 2023 WI 79, ¶¶3-4, 410 Wis. 2d 1, 998 N.W.2d 370 (holding the state legislative maps violated Wisconsin Constitution's contiguous territory requirement, enjoining further use of those maps, and ordering remedial maps be drawn prior to 2024 elections), litigants from the *Johnson* case filed a motion seeking relief from this court's March 3, 2022 decision and order adopting the congressional districting maps in *Johnson II*, 400 Wis. 2d 626. On March 1, 2024, this court denied the motion. *Johnson v. WEC*, No. 2021AP1450-OA, unpublished order (Wis. Mar. 1, 2024) ("[The] motion for relief from judgment is denied.").

Then, just six months ago, two new petitions for leave to commence an original action were filed with our court challenging the same congressional districting maps. *Bothfeld v. WEC*, No. 2025AP996-OA (filed May 7, 2025); *Felton v WEC*, No. 2025AP999-OA (filed May 8, 2025). This court unanimously denied both original action petitions. *Bothfeld*, No. 2025AP996-OA, unpublished order (Wis. June 25, 2025) ("[T]he petition for leave to commence an original action is denied."); *Felton*, No. 2025AP999-OA, unpublished order (Wis. June 25, 2025) ("[T]he petition for leave to commence an original action is denied.").

In sum, this court has consistently and repeatedly denied challenges to the now longstanding congressional districting maps proposed by Governor Evers and adopted by this court in *Johnson II*, 400 Wis. 2d 626. Before entertaining yet another challenge, I would specifically require the parties to explain why this court should now appoint a three-judge panel—as if starting anew—when both SCOTUS and this court have repeatedly upheld the maps. We should be mindful not to engage in, or even entertain, partisan gamesmanship aimed at further gerrymandering Wisconsin.

legislature drew and the governor approved.[4] The so-called "apportionment" is of maps our court selected. The majority does not consider any of these distinctions in its order. Because these are court-created maps, the panel has no constitutional authority to revisit or change them, nor can it redefine apportionment because that too was decided in *Johnson I*. In *Johnson I* and *Johnson II*, the court decided apportionment, partisan gerrymandering, and congressional map districting, and those decisions remain unchanged, as do the court-selected congressional maps. *Johnson I,* 399 Wis. 2d 623, ¶¶3-4, 38, 40-63; *Johnson II,* 400 Wis. 2d 626, ¶52. Plaintiffs cite no authority to support a circuit judge panel revisiting our court's determinations on apportionment. What the panel is to consider in addressing only apportionment is as clear as mud. If our court understands that the constitution forbids such a panel from reconsidering or overturning our court's decision on apportionment or redistricting, then it is unclear what else the panel can do other than restate *Johnson I* and *II*. Otherwise, the court's order has put the panel in a constitutional dilemma because the panel lacks any authority to revisit our decisions.

Hand picking circuit court judges to perform political maneuvering is unimaginable. Yet, my colleagues persist and appear to do this, all in furtherance of delivering partisan, political advantage to the Democratic Party.

I dissent without considering the merits of the case. In fact, it is impossible to know what the panel will be doing. The order ignores the many concerns that I raise, the questions to be answered by the panel, the factors to be weighed, the arguments that will be set forth, or any standards that might apply. Given *Johnson I* and its progeny, it is difficult to know what, if anything, this panel can or should do, and our court provides zero guidance. To me, the only constitutionally permissible action we should take is to dismiss this charade.[5]

---

[4] Apportionment and redistricting are distinct terms in the constitution and the statute at issue uses apportionment.

[5] Pursuant to the Wisconsin Constitution, the Wisconsin Supreme Court is vested with superintending and administrative authority over all Wisconsin courts. WIS. CONST. ART. VII, § 3(1) ("The supreme court shall have superintending and administrative authority over all courts."). "'This authority is as broad and as flexible as necessary to insure [sic] the due administration of justice in the courts of this state,' and allows this court to control the course of litigation in lower courts." *Wis. Business Leaders for Democracy ["WBLD"] v. WEC*, No. 2025XX1330, unpublished order at 5 ¶3 (Wis. Sept. 25, 2025) (Rebecca Grassl Bradley, J.,

## I. A Pattern of Partisan Judicial Activism

Once again, a majority of this court engages in partisan judicial activism—this time to reshape congressional maps. This is no isolated incident; it is a pattern.[6] As Justice Rebecca Grassl Bradley recently observed:

> Political forces continue to use this court to obtain what the democratic process denies them. The Wisconsin Constitution plainly prohibits a circuit court—empaneled by this court or not—from adjudicating a challenge to a final judgment of the supreme court. The majority nevertheless entertains yet another kick at the redistricting cat.

*WBLD v. WEC*, No. 2025XX1330, unpublished order at 8 ¶12 (Wis. Sept. 25, 2025) (Rebecca Grassl Bradley, J., dissenting).

We have heard the substance of this case before. The plaintiffs have merely returned for a second bite at the apple armed with a fresh legal theory. Even though they have cited no authority in support of their extraordinary legal theory, this court accepts their approach wholesale without demonstrating any legal analysis, critical reasoning, or attempt to reconcile this unprecedented proceeding with constitutional constraints. Not one word from the majority addressing laches. Instead, the court places this three-judge panel in the impossible position of considering "apportionment" without any authority to reconsider or overturn our precedent.

---

dissenting) (*quoting Madison Tchrs., Inc. v. Walker*, 2013 WI 91, ¶16, 351 Wis. 2d 237, 839 N.W.2d 388; *then citing* WIS. CONST. ART. VII, § 3(2) ("The supreme court may issue all writs necessary in aid of its jurisdiction.")).

[6] *Clarke*, 410 Wis. 2d 1, ¶¶80-81 (Annette Kingsland Ziegler, C.J., dissenting) ("This pattern of conduct ["outcome based, end-justifies-the-means judicial activist approach"] is entrenched . . . to achieve particular political outcomes [tossing state legislative maps adopted less than two years before] regardless of principles fundamental to the constitution and the law. . . . What other settled areas of law might be next?"); *see also Priorities USA v. WEC,* 2024 WI 32, ¶51, 412 Wis. 2d 594, 8 N.W.3d 429 (Rebecca Grassl Bradley, J., dissenting) ("The majority forsakes the rule of law in an attempt to advance its political agenda" overruling *Teigen v. WEC,* 403 Wis. 2d 607, 976 N.W.2d 519, decided by this court just two years before.).

## II. The Court's Order Conflicts With The Wisconsin And United States Constitutions.

The underlying legal issue presented is not new. It was definitively resolved in *Johnson I*, 399 Wis. 2d 623, and *Johnson II*, 400 Wis. 2d 626. This court held that Article I, sections 1 and 22 of the Wisconsin Constitution do not impose limits on redistricting; rather, the only constitutional constraints appear in WIS. CONST. ART. IV, §§ 3, 4, and 5. *Johnson I*, 399 Wis. 2d 623, ¶¶53-64. Reading additional limits into Article I violates basic interpretive principles and thrusts the judiciary into the "political thicket" beyond its authority. *Id.*, ¶64. This court would be wise to avoid traversing that briar patch.

Worse yet, the plaintiffs' theory disobeys the United States Constitution's Elections Clause which vests redistricting responsibility exclusively in "the Legislature thereof." U.S. CONST. ART. I, § 4. As the United States Supreme Court recently reaffirmed, the role of state courts in congressional redistricting is "exceedingly limited." *Moore v. Harper*, 600 U.S. 1, 34 (2023). This lawsuit invites the very judicial meddling that the Constitution prohibits. We see other states invoking fairly interesting procedures to address congressional maps. *See* Harvard Kennedy School, *Explainer: Understanding the mid-decade redistricting push in Texas*, https://www.hks.harvard.edu/faculty-research/policy-topics/politics/ explainer-understanding-mid-decade-redistricting-push-texas (Aug. 22, 2025); Legislative Analyst's Office, *Proposition 50: Authorizes Temporary Changes to Congressional District Maps in Response to Texas' Partisan Redistricting. Legislative Constitutional Amendment*, https://lao.ca.gov/ BallotAnalysis/Proposition?number=50&year=2025 (Nov. 4, 2025). We do not see other state supreme courts allowing their lower courts to re-evaluate court-established congressional maps. While it may be more expedient for those in political favor to continue to turn to our court for map drawing, redrawing, and redrawing, or any of a host of "hot" political issues, that is not what the Constitution demands. And, these are federal congressional maps, but the majority does not give any weight to important federal constitutional concerns. The judiciary is to be the least dangerous branch of government. Not today, at least in Wisconsin.

## III. Redistricting Is A Legislative Task, Not A Judicial One.

Redistricting and reapportionment are "inherently . . . legislative . . . task[s]." *Jensen v WEC*, 2002 WI 13, ¶10, 249 Wis. 2d 706, 639 N.W.2d 537. Article IV, section 3 of the Wisconsin Constitution requires

the legislature to "apportion and district anew" after each federal census. WIS. CONST. ART. IV, § 3. Apportionment and redistricting are explicitly placed outside the realm of judicial power. This might be a different challenge had the legislature and governor agreed and instituted maps as provided in the constitution, but that was not the case—our court has definitively decided apportionment and selected the congressional maps.

For four years, elections have been conducted under the maps proposed by Democratic Governor Tony Evers and adopted by this court in *Johnson II*. 400 Wis. 2d 626, ¶52. Nothing concerning this case arises from an impasse requiring judicial intervention. The court has considered challenges before, and since *Johnson* this court has consistently declined to reconsider the congressional maps chosen—those drawn by Governor Evers. The text of the constitution is clear; this court's decisions are final. That should be the beginning and end of this case. The court should leave it in the hands of the People through their elected representatives to decide their maps.

IV. The Constitution Mandates Dismissal.

The constitution is the supreme law of the state. And, this court's interpretation of it controls. *See WBLD*, No. 2025XX1330, at 6 ¶7 (Rebecca Grassl Bradley, J., dissenting) ("The Wisconsin Constitution controls, and it supersedes the legislature's enactments.").

When this court speaks, its decision is final. Neither circuit courts nor a panel of circuit court judges may review, much less overturn, a final decision of the Wisconsin Supreme Court. *See State ex rel. J.H. Findorff & Son, Inc. v. Cir. Ct. for Milwaukee Cnty.*, 2000 WI 30, ¶40, 233 Wis. 2d 428, 608 N.W.2d 679 (Jon P. Wilcox, J., concurring); *State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson*, 103 Wis. 591, 626, 79 N.W. 1081, 1091–92 (1899) ("By the constitution this court was given power to exercise fully and completely the jurisdiction of superintending control over all inferior courts. . . . No part of that power can be taken away by a statute."); *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶35, 376 Wis. 2d 147, 897 N.W.2d 384 ("[T]he legislature is prohibited from unduly burdening or substantially interfering with the judicial branch.") (citation omitted).

Yet, the majority appoints circuit court judges to do something, but provides no guidance. This panel cannot constitutionally reconsider the court's legal conclusions regarding apportionment or the congressional maps. Allowing the abuse of WIS. STAT. § 801.50(4m) in this way runs

headlong into constitutional constraints.[7] Before we even begin to consider ordering a panel to apportion under this statute, we must start with the constitution. The majority instead starts with a facial application of the statute, completely ignoring constitutional implications of having a panel act on a matter that has been definitively decided by our court.

Under the judicial hierarchy established by the Wisconsin Constitution, "the only constitutionally permissible disposition" is dismissal. *WBLD*, No. 2025XX1330, at 8 ¶11 (Rebecca Grassl Bradley, J., dissenting); WIS. CONST. ART. VII, §§ 3, 5, & 8. That is exactly what this court should do.

## V.  This Case Is An Impermissible Collateral Attack.

By ignoring its own decisions, the majority seems to welcome lower courts to undermine this court's constitutional authority and ignore its precedent. To be clear, this lawsuit is nothing more than a collateral attack on *Johnson I* and *II*. Such attacks "would ordinarily be dismissed upon arrival." *Clarke v. WEC*, 2023 WI 79, ¶230, 410 Wis. 2d 1, 998 N.W.2d 370 (Rebecca Grassl Bradley, J., dissenting). Only this court may overrule its own precedent. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Lower courts lack that power, full stop. My colleagues in the majority should be wary of conjuring away our own authority and thrusting even more inconsistency into the judicial system.

## VI.  The Claims Are Barred By Laches.

This case is also barred by the doctrine of laches. Plaintiffs waited 14 years and seven elections to bring this incongruous theory. They now presumably seek maps that favor Democratic candidates even further, arguing that somehow the 2021 maps had the taint of the 2011 "anticompetitive" maps. Their delay is unreasonable, unexplained, and highly prejudicial. "As this court has consistently held, '[l]aches is an affirmative, equitable defense designed to bar relief when a claimant's failure to promptly bring a claim causes prejudice to the party having to defend against that claim.'" *Trump v. Biden*, 2020 WI 91, ¶113, 394

---

[7] WISCONSIN STAT. § 801.50(4m) is a *venue* statute that cannot grant jurisdiction on a circuit court, nor strip it from our court. Jurisdiction is constitutional in Wisconsin; the legislature does not have the authority to deviate from that which the constitution prescribes. *City of Eau Claire v. Booth*, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738.

Wis. 2d 629, 951 N.W.2d 568 (Annette Kingsland Ziegler, J., dissenting) (quoting *Wis. Small Bus. United, Inc. v. Brennan*, 2020 WI 69, ¶11, 393 Wis. 2d 308, 946 N.W.2d 101). *See also Clarke,* 410 Wis. 2d 1, ¶¶93, 168-173 (Annette Kingsland Ziegler, C.J., dissenting).

Plaintiffs never raised these claims when this court adopted Governor Evers' congressional maps in *Johnson II*. Their audacious theory is a post-hoc attempt to further tilt the political landscape. It cannot survive laches.

Admittedly, our court's application of the doctrine of laches has been less than a model of clarity. *See Clarke,* 401 Wis. 2d 1, ¶37 (laches did not apply to lawsuit filed a year and half after *Johnson III*, 401 Wis. 2d 198); *Trump v. Biden*, 394 Wis. 2d 629, ¶3 (applying laches to dispose of 3 of 4 election challenges); *Hawkins v. WEC*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877 (per curiam) (not applying laches to bar action filed two days after certification of candidates for election). But under any laches analysis, 14 years (with numerous elections, legislative redistricting, and court decisions later) is far too long. This lawsuit must be barred by laches if that doctrine has any meaning at all.

VII.   The Secret Selection Process Undermines Public Trust.

Compounding the constitutional violations is the opaque process by which my colleagues selected the three-judge panel. There has been no disclosure of criteria, no explanation of procedure, and no transparency whatsoever. Not that these judges bear any fault in their selection, but there are over 260 circuit judges in our state, and we have no information on how or why these six judges were picked. The secrecy surrounding the selection process invites doubt. The public will never know what guided these choices; neither do I.

The panels selected were:

Bothfeld v. WEC:
- Judge Julie Genovese, Dane County (elected in 2009; re-elected in 2015, 2021);
- Judge Emily Lonergan, Outagamie County (appointed in 2019 by Governor Evers; elected in 2020); and
- Judge Mark Sanders, Milwaukee County (elected in 2012; re-elected in 2018, 2024).

WBLD v. WEC:
- Judge David Conway, Dane County (appointed in 2020 by Governor Evers; elected in 2021);
- Judge Patricia Baker, Portage County (appointed in 2021 by Governor Evers; elected in 2022); and
- Judge Michael Moran, Marathon County (elected 2011; re-elected in 2017, 2023).

The lack of candor used to select these judges places them in an untenable position—tasked with adhering to what the court has answered, not running afoul of what the constitution prohibits, and knowing that a secret selection has already cast a cloud over any action they may take. We should not be placing our circuit court judges in such an impossible position.

## VIII. Conclusion

Today is not a good day for Wisconsin's judicial system. Our court has undermined its own constitutional authority in furtherance of affording the Democratic Party even more partisan political advantage than it already has with Governor Evers' congressional maps in place. My colleagues ought not complain when our precedent is not taken seriously or followed. By entertaining this legal fiction, the majority jeopardizes the credibility of the judiciary and invites violation of foundational constitutional principles. Redistricting and reapportionment authority belongs to the legislature—not the judiciary. It occurs after a census. Because of the impasse after the last census, our court was the final word regarding apportionment and selecting the congressional maps. A circuit court panel simply cannot overturn or revise *Johnson I* and *II*.

What remains unknown, is how this case will develop, what legal issues might arise, and how the panel will maneuver this constitutional entanglement. It could be that the panel is relegated to declaring that the law is as we have stated in *Johnson I* and *II*. But we will wait to see, even though this claim should be barred by laches. Regardless of what might inure to the partisan political advantage of the Democratic Party, it comes at great cost to the judicial system and judicial independence.

For all the foregoing reasons, I respectfully dissent.

REBECCA GRASSL BRADLEY, J., dissenting.

The plaintiffs frame this court's sole role in the proceedings as fulfilling a ministerial duty imposed by statute. The majority agrees. The members of this court, however, swore an oath to uphold the Wisconsin Constitution, which prohibits lower courts from reconsidering decisions of this supreme court. The Wisconsin Constitution is superior to the Wisconsin Statutes, and is dispositive.

The circuit court nevertheless gave notice to this court of the WBLD and Bothfeld Complaints under WIS. STAT. § 801.50(4m). In response, the majority pretends this is a fresh challenge to an apportionment—rather than a collateral attack on a judgment of this court—and, invoking WIS. STAT. § 751.035(1) with blinders on, appoints a hand-picked three-judge panel to consider plaintiffs' challenge to this court's adoption of Governor Tony Evers' proposed congressional map in *Johnson v. Wis. Elections Comm'n*, 2022 WI 14, ¶52, 400 Wis. 2d 626, 971 N.W.2d 402 ("*Johnson II*"). None of this comports with the constitution.

The Wisconsin Constitution denies the legislature any authority to empower a lower court to review the constitutionality of a final judgment of this court. The legislature itself, as amicus curiae in these matters, rejects the majority's contrary interpretation, recognizing that the court's constitutional superintending and appellate authority over all Wisconsin courts precludes the circuit court from adjudicating plaintiffs' claims. The constitution itself relieves this court of any ostensible obligation to appoint a three-judge panel to perform that which the constitution forbids. Nonetheless, the majority—without even mentioning the constitution— simplistically cites the statute and says it must obey what it perceives to be a legislative command. Impermissibly interpreting statutory law to override the constitution, the majority punts to a panel of lower court judges a decision they are constitutionally unauthorized to make.

In an unprecedented ruling, the majority holds that WIS. STAT. § 751.035(1) imposes a *mandatory* duty upon this court to appoint a three-judge circuit court panel for any "action to challenge the apportionment of any congressional or state legislative district" under § 801.50(4m). The majority says: "Because [the Bothfeld and WBLD] complaints constitute 'actions to challenge the apportionment of a congressional or state legislative district' within the meaning of § 801.50(4m), this court is *required* to appoint a three-judge panel and to select a venue for the action pursuant to § 751.035." (cleaned up) (emphasis added). The majority errs—gravely. Setting aside the purely political shenanigans underlying these particular

cases, toppling Wisconsin's judicial hierarchy undermines Wisconsin's constitutional structure, damages this court's legitimacy, and deprives the People of Wisconsin of the stability the rule of law provides.

In addition to ignoring the constitution, the majority makes no mention whatsoever of the redistricting actions resolved by this court, which Justice Annette Kingsland Ziegler recounts in her dissent. After the 2020 Census revealed malapportionment, the Wisconsin Legislature drew new maps, but Governor Evers vetoed them. This political impasse prompted an original action, which this court granted to remedy the unconstitutional malapportionment produced by population shifts.[1] Thereafter, both the United States Supreme Court and this court denied multiple challenges to the constitutionality of the congressional map. Justice Ziegler's Dissent, n.3. This is no ordinary case in which a party brings an apportionment challenge in the first instance in circuit court; this supposedly supreme court has already spoken, and circuit court judges have no authority to revisit this court's decision, even if the legislature purportedly gave it.

## I.

The majority's interpretation of WIS. STAT. § 801.50(4m) and WIS. STAT. § 751.035(1) permits a panel of Wisconsin circuit court judges to reopen a final judgment of *the supreme court* to reconsider the constitutionality of the *Johnson II* congressional map adopted by this court to remedy malapportionment. The hierarchy of appellate jurisdiction under the Wisconsin Constitution is plain, and the majority's holding is glaringly unconstitutional. The legislature cannot empower a circuit court to review a final judgment of the Wisconsin Supreme Court, nor can the legislature require this court to appoint a circuit court panel to do so. The majority tacitly approves an impermissible collateral attack—in a lower court—on a decision of this court, but the Wisconsin Constitution prohibits such a maneuver.

---

[1] *Johnson v. WEC*, 2021 WI 87, 399 Wis. 2d 623, 967 N.W.2d 469 ("*Johnson I*"); *Johnson v. WEC*, 2022 WI 14, 400 Wis. 2d 626, 971 N.W.2d 402 ("*Johnson II*"), *summarily rev'd sub nom. Wis. Legislature v. Wis. Elections Comm'n*, 595 U.S. 398 (2022) (per curiam); *Johnson v. WEC*, 2022 WI 19, 401 Wis. 2d 198, 972 N.W.2d 559 ("*Johnson III*").

The Wisconsin Constitution vests the Wisconsin Supreme Court with superintending and administrative authority over all Wisconsin courts. WIS. CONST. ART. VII, § 3(1) ("The supreme court shall have superintending and administrative authority over all courts."). "This authority is as broad and as flexible as necessary to ensure the due administration of justice in the courts of this state," and allows this court "to control the course of ordinary litigation in lower courts." *Madison Tchrs., Inc. v. Walker*, 2013 WI 91, ¶16, 351 Wis. 2d 237, 839 N.W.2d 388 (internal quotations omitted); WIS. CONST. ART. VII, § 3(2) ("The supreme court may issue all writs necessary in aid of its jurisdiction."). The Wisconsin Constitution also vests the Wisconsin Supreme Court with "appellate jurisdiction over all courts." WIS. CONST. ART. VII, § 3(2). By contrast, the Wisconsin Constitution vests the circuit courts with "appellate jurisdiction *in the circuit* as the legislature may prescribe by law." WIS. CONST. ART. VII, § 8 (emphasis added).

Because the Wisconsin Supreme Court is superior to Wisconsin's lower courts, a circuit court may not review, much less overrule, a decision of the Wisconsin Supreme Court. "The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). No legislative enactment may license a circuit court to invade a final judgment of the State's highest court.

The majority says the plaintiffs' claims fall under § 801.50(4m), which governs an "action to challenge the apportionment of [a] congressional . . . district" (emphasis added). Accordingly, the majority holds, this court "is *required* to appoint a three-judge panel and to select a venue for the action pursuant to § 751.035." (cleaned up) (emphasis added). The Wisconsin Constitution controls, and it supersedes the legislature's enactments.

Under the Wisconsin Constitution, this court's superintending authority is plenary and without limitation or exception. WIS. CONST. ART. VII, § 3(1). "Under the Wisconsin Constitution, [the administration of the courts is] expressly vested in this court; our authority to supervise and administer the Wisconsin court system is not created or circumscribed by the legislature." *State ex rel. J.H. Findorff & Son, Inc. v. Cir. Ct. for Milwaukee Cnty.*, 2000 WI 30, ¶40, 233 Wis. 2d 428, 608 N.W.2d 679 (Jon P. Wilcox, J., concurring). The legislature cannot limit, invade, or strip this court's constitutional authority. *State ex rel. Fourth Nat'l Bank of Phila. v. Johnson*, 103 Wis. 591, 79 N.W. 1081, 1091–92 (1899) ("By the constitution this court was given power to exercise fully and completely the jurisdiction of

superintending control over all inferior courts . . . No part of that power can be taken away by a statute."); *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶35, 376 Wis. 2d 147, 897 N.W.2d 384 ("[T]he legislature is prohibited from unduly burdening or substantially interfering with the judicial branch.") (citation omitted).[2]

No statute can invade this court's constitutionally-conferred *appellate* jurisdiction either. Under Article VII, Section 3(2), "[t]he supreme court has appellate jurisdiction over all courts . . . ." While plaintiffs concede WIS. STAT. § 801.50(4m) and WIS. STAT. § 751.035(1) leave this court's "superintending and administrative authority" under WIS. CONST. ART. VII, § 3(1) intact, plaintiffs posit it would be extraordinary for the court to exercise it in this case. Hardly. Allowing a panel of circuit court judges to adjudicate a challenge to a supreme court decision impermissibly gives lower court judges appellate jurisdiction over the state's highest court. *That* is extraordinary. Article VII, Section 8 gives circuit courts "such appellate jurisdiction *in the circuit* as the legislature may prescribe by law." The supreme court is, of course, beyond the realm of any circuit.

Supreme court justices cannot appoint a panel of circuit court judges to review Supreme Court judgments. *See* WIS. CONST. ART. VII, § 4. This court has seven members, all of whom must be elected. *Id.* at (1). Only those seven elected "justices of the supreme court," *id.* § 4(1) (election), can review the judgments of this court, *id.* § 3(2) (appellate jurisdiction). "[C]onstitutional judges take no power from the constitution, [and] can take none from the legislature, to subdelegate their judicial functions." *Van Slyke v. Trempealeau Cnty. Farmers' Mut. Fire Ins. Co.*, 39 Wis. 390, 392 (1876); *see also State ex rel. Universal Processing Servs. of Wis., LLC v. Cir. Ct. of Milwaukee Cnty.*, 2017 WI 26, ¶75, 374 Wis. 2d 26, 892 N.W.2d 267. The majority errs in interpreting § 801.50(4m) and § 751.035(1) to give circuit court judges power to review a judgment of this court.

Final judgments of a supreme court are final. "The constitution provides that [the Wisconsin Supreme Court] shall be a court of last resort— a court whose judgments, so far as they relate to state polity, are final and conclusive." *Sutter v. State Dep't of Nat. Res.*, 69 Wis. 2d 709, 717, 233 N.W.2d 391 (1975). This court's appellate jurisdiction is *plenary* and

---

[2] SECTION 801.50(4m) is a venue statute that cannot confer jurisdiction on a circuit court, nor strip it from this court. Jurisdiction in Wisconsin is constitutional; the legislature lacks authority to deviate from constitutional prescriptions. *See City of Eau Claire v. Booth*, 2016 WI 65, 370 Wis. 2d 595, ¶7, 882 N.W.2d 738.

provided *without exception*. Wis. Const. art. VII, § 3(2) ("The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings. The supreme court may issue all writs necessary in aid of its jurisdiction.") The majority violates this bedrock principle, calling into question the finality of this court's decisions, and disturbing the stability of the rule of law in the process.

Perhaps to insulate themselves from renewed public criticism, the members of the majority unlawfully delegate the job of redrawing the congressional map to a hand-picked circuit court panel. The majority says the Wisconsin Legislature compels it to appoint a panel in each of these cases, even though the legislature denies it. Even if the majority's interpretation of the statute were correct, this court cannot delegate its appellate jurisdiction to lower courts, even under legislative cover. WIS. CONST. ART. VII, § 3(2); *see also Van Slyke*, 39 Wis. at 392; *Gabler*, 376 Wis. 2d 147, ¶¶47-50 (holding unconstitutional a statutory board created to discipline judges).

While the Wisconsin Constitution gives circuit courts subject matter jurisdiction over "all matters civil and criminal," WIS. CONST. ART. VII, § 8; *Vill. of Trempealeau v. Mikrut*, 2004 WI 79, ¶1, 273 Wis. 2d 76, 681 N.W.2d 190, circuit court jurisdiction cannot collide with the final word of the supreme court on any matter. The circuit court must yield to the superior authority of the supreme court. Wisconsin's current congressional districting map is a final judgment of this court. *Johnson II*, 400 Wis. 2d 626, ¶52 (adopting Wisconsin's current congressional district map as a remedy ordered by this court). Lacking any authority to review or modify this court's decision, the Dane County Circuit Court should have dismissed both challenges to the *Johnson II* map at the outset.

Since the circuit court did not dismiss these cases, this court is constitutionally compelled to do so. This court may not appoint a three-judge circuit court panel to revisit *Johnson II*, notwithstanding WIS. STAT. § 801.50(4m) and WIS. STAT. § 751.035(1). The Wisconsin Constitution forbids it. This court must uphold the hierarchy of judicial authority the Wisconsin Constitution establishes in Article VII, Sections 3, 5, and 8. Dismissing these actions is the only constitutionally permissible disposition.

## II.

Even if the legislature could dictate how the judiciary handles apportionment challenges, this court's constitutional superintending authority over lower courts trumps any purported legislative interference.

Wis. Const. art. VII, § 3. "[T]he power to regulate procedure was at that time [of the ratification of the Wisconsin Constitution] considered a judicial power," not legislative. *In re Constitutionality of Section 251.18, Wis. Statutes*, 204 Wis. 501, 236 N.W. 717, 719 (1931). The power to promulgate rules of procedure in Wisconsin are (just like they are in the federal courts) "vested in the courts; and it never has occurred to anyone that it was a delegation of legislative power" from the legislature to the courts. *Id.* at 719 (quoting *Bank of U.S. v. Halstead*, 23 U.S. 51, 61 (1825)). Courts may *accept* legislatively-prescribed regulations of the "practice of the Courts," but only where it is "deemed expedient so to do." *Halstead*, 23 U.S. at 61. "The power given to the Courts over their process" is "ministerial . . . and partakes no more of legislative power, than that discretionary authority entrusted to every department of the government in a variety of cases." *Id.*

This court has accepted procedural statutes like WIS. STAT. § 801.50(4m) and WIS. STAT. § 751.035(1), but under the original understanding of the Wisconsin Constitution, this court retains its ultimate authority over court procedure. Assertion of that authority is particularly imperative if a statute appears to elevate a circuit court to a position of appellate review over the supreme court—a constitutional impossibility. Legislative interference with the authority constitutionally conferred on the judiciary has long been recognized to violate the Wisconsin Constitution. *State v. Pollard*, 112 Wis. 232, 87 N.W. 1107, 1108 (1901) (holding unconstitutional a statute which "attempted to strip the circuit courts of the power to issue writs of prohibition," over then-existing lower courts, a "supervisory power" of circuit courts under Article VII, Section 8 of the Wisconsin Constitution at that time). This court held in *Pollard*, "[i]t is plain that the words 'supervisory control,' in the section [on circuit courts], are to be construed as synonymous with the words 'superintending control,' as used in the constitutional grant of power to this court." *Id.* "[S]upervisory control . . . stands in the constitution as an absolute grant of power." *Id.* Accordingly, "the legislature cannot take from the circuit court any part of its supervisory jurisdiction over lower courts." *Id.* The same principle applies no less to this court's superintending authority under Article VII, Section 3.

\* \* \*

"A collateral attack on a supreme court judgment" like these "would ordinarily be dismissed upon arrival." *Clarke v. Wis. Elections Comm'n*, 2023 WI 79, ¶230, 410 Wis. 2d 1, 998 N.W.2d 370 (Rebecca Grassl Bradley, J., dissenting), *reconsideration denied*, 2024 WI 40, 15 N.W.3d 58. Political forces continue to use this court to obtain what the democratic process denies them. The Wisconsin Constitution plainly prohibits a circuit court—

empaneled by this court or not—from adjudicating a challenge to a final judgment of the supreme court. The majority nevertheless entertains yet another kick at the redistricting cat. Unlike Schrödinger's cat, this one most assuredly has been dead for years. I dissent.